WHITE *v.* MILBURN.

4-5314                                          122 S. W. 2d 589

Opinion delivered December 19, 1938.

374

*Carmichael & Hendricks,* for appellant.

*George E. Morris* and *Chas. B. Thweatt,* for appellee.

BAKER, J.   We offer a brief statement of the issues involved in this case.   A suit was brought by George H. Milburn for a decree of foreclosure of a mortgage executed by J. C. White and Laura White.   In due time the decree was rendered, the property foreclosed upon was sold, and there was a deficiency of $3,306.65.   Two or three months prior to the sale of this property J. C. White and his wife were sued to cancel an alleged fraudulent conveyance of other property wherein about five hundred acres of land were deeded to the two daughters of White and his wife and to a son-in-law, the husband of one of the daughters.   White and his wife filed a suit which they have been pleased to call a "bill of review" to cancel the foreclosure decree and set aside the sale, pleading that they have a meritorious defense thereto in that two or three years prior to the foreclosure decree they had executed a deed and delivered same to Mr. Harry Ehlers, an agent for and in charge of properties belonging to the appellee, Milburn; that said conveyance was in satisfaction of all indebtedness.

It may be said that if this contention on the part of appellants is well founded, a decision so holding and declaring necessarily settles the second suit in regard to

the deficiency judgment and the alleged voluntary conveyance of property by the appellants. Appellants urge, first, that there was no service of summons upon Mrs. White in the matter of the foreclosure suit; that at the time it was instituted Mr. White was served with a copy of the summons at England, Arkansas, and that a copy was delivered to him for his wife who was ill at the time, and the proof offered on behalf of appellants, apparently, is sufficient to justify their contention that there was in fact no service upon Mrs. White. She was ill for several months and, according to her statements, decree of foreclosure had already been rendered when she recovered and first learned that suit had been instituted, and that this, as above stated, was several years after the alleged execution of the deed given in satisfaction of the entire indebtedness.

Many facts have been set forth, not only by Mr. and Mrs. White, but by other witnesses who were disinterested, as tending to establish the controversy they make in regard to the execution of the said deed. A general statement of them, without repetition of the evidence, will suffice.

Mr. White and Mr. William Ehlers were tenants in common in possession of the property involved in the foreclosure. Mr. White says that the amount of the indebtedness, $4,500, was the total amount that the two of them owed, covering their farm operations. Mr. Ehlers, however, says that the amount of the indebtedness was approximately $9,000; that he himself paid $4,500 and that Mr. White, not being able to pay, executed his note with the mortgage covering his interest in the land for $4,500, said amount being the amount he himself should have paid. The note and mortgage were delivered to Mr. Harry Ehlers, who was actively in charge of the Bank of England and who represented appellee, Milburn, his uncle, with full authority to act in all matters for Mr. Milburn, even to the extent that he had the right, power, and authority to accept the alleged deed in full settlement or satisfaction of such indebtedness. Such is the effect of Mr. Milburn's testimony.

Mr. White's contention is that late in 1932, although he had farmed the land for that year, Mr. Harry Ehlers came to his house, or place of business, at Coy, Arkansas, bringing with him a notary public, that he and his wife joined in the execution of the deed, at Mr. Harry Ehlers request, conveying this property. We think it undisputed that after, sometime in the fall of 1932, Mr. Harry Ehlers and Mr. William Ehlers had full charge of the property that had previously been conveyed by Mr. and Mrs. White's mortgage. They made all rental contracts, collected all rents. The only act of Mr. White, indicating that he may have had some interest in the property, is that he signed a rental waiver in 1933 at the request of Mr. Ehlers so that tenants could borrow money on crops. The two Ehlers brothers continued in possession of this property, handling it in all respects, as, if it were their own. They even tore down some buildings, which were upon the land, some of which were of little value, moved them off the land, and used the lumber in building other structures. Mr. William Ehlers testified, as did Mr. White, that before the suit was instituted, he presented the note which was not surrendered at the time it is alleged the deed was executed, and asked Mr. White about it, and that Mr. White's answer was, "you know about that." Mr. Ehlers then said: "You mean a deed was executed conveying the land." Mr. White answered: "Yes."

Harry Ehlers died in 1933. The purported deed was never found. Suit was instituted to foreclose the mortgage. Mr. White says that at the time the suit was instituted he took a copy of the summons to a lawyer at England, Arkansas, and asked him to look after it for him. The attorney employed admits this fact, admits that he never at any time filed any answer, does not deny that he had a conversation with the attorney for plaintiff, Milburn, in regard to the suit in which he is alleged to have stated that all he thought White wanted was more time, but states that he has no recollection in regard to the said conversation and he has no explanation for the reason, he has fortgotten, why he did not file some answer or take care of the interest of Mr. and Mrs. White

under his alleged employment. Indeed, that is one of the grounds set up by the appellants why the foreclosure decree should be canceled and set aside, that is, that it was neglected by their counsel.

The questions on this appeal have been presented under five different heads, the first being, was there legal ground for vacating the foreclosure decree against White and, second, the same as to Mrs. White. Third, was there a meritorious defense to the foreclosure suit. Fourth, was it not proper to order a sale of the land alleged to have been voluntarily conveyed, and, fifth, was there no fraudulent conveyance of other property.

In discussing these matters, we shall, perhaps, not attempt to discuss these several issues separately, as many of the facts are so interwoven and related to each other that it seems better to state them in chronological order than otherwise. Let it be said in the beginning that if there was such a deed executed by White and his wife to Mr. Milburn in satisfaction of the indebtedness, that conveyance was a complete defense to the note and mortgage sued upon. It would be useless to attempt to argue the proposition. That defense was not tendered. Milburn and his nephew, William Ehlers, evidently did not believe that there had been such conveyance because they say they were not able to find it among Harry Ehlers' papers, nor in Mr. Milburn's lock box, which was kept in the Bank of England, nor were any of the employees at the bank able to locate the deed, and the notary public, who is alleged to have taken the acknowledgment, though she is said to have kept a record of notarial acts, and offered it in evidence, was unable to find that she had ever taken such acknowledgment and she did not remember the fact that she had done so. The note and mortgage executed by Mr. White and his wife were never surrendered and at the time of the filing and trial of this case could not be found, though the attorney who filed the suit testified that, at the time he took the decree, he had them in his files. The note when finally found, after the decree of foreclosure, did not show that it had been filed with the clerk, as it should have been at the time of the rendition of the foreclosure decree. But since there is

a presumption of regularity in the rendition of the decree, it may be presumed that the note was offered in evidence and submitted to the court when the decree was rendered, as was the mortgage, or a copy thereof.

Mr. White and his wife did not file an answer to this foreclosure suit, though they said they employed an attorney. However meritorious their defense may have been, it was not offered and there is no doubt that Mr. White had been duly served with summons long prior to the time of the rendition of this decree. It was he who employed the attorney. It should be here stated such attorney has no connection with the case under consideration. It was he who offered to accept service for his wife. He testified that he asked the officer not to attempt to serve the summons on his wife because of the fact that she was very ill and that he was afraid of the effect it might have upon her. It was long after she had recovered before she was advised of the suit. She says the time of her illness was from September until February. The summons, however, by its return shows that it was served on April 28th, some months prior to the time of her illness, and it was immediately after this service of summons, according to Mr. White, that he employed the attorney. So the reason urged and argued, as the one preventing the service of summons upon Mrs. White, wholly fails. There was no reason given why she was not served in April. The deputy sheriff, although he had testified, upon examination in chief, substantially as Mr. White had in regard to why he had not served the summons on Mrs. White, on cross-examination, admitted that he had served and returned a summons on her at one time, but that he did not remember the date therof. The reason given by Mr. White for not talking to his wife about this suit, when instituted, that she was too ill to be disturbed in regard to it, fails, when we consider that the summons was served in April and the beginning of her illness did not take place until September. So it seems almost inconceivable that Mr. White did not communicate these facts under the circumstances that seem to have been established.

In the face of these facts, as they appear in the record, we are impelled to hold that the proposition of

unavoidable casualty, as pleaded and sought to be established by the appellants, cannot be maintained. Appellants relied on the seventh sub-division of § 8246, Pope's Digest. Since the reason urged as the basis of the unavoidable casualty fails, the force of the argument is lost. It is a little peculiar, in the light of our decisions which seem to be according to the weight of authority, that the appellants, on this appeal, charge neglect of their attorney not now connected with this suit as a cause or reason for setting aside the decree of foreclosure. We have followed that line of authorities which hold that the neglect of counsel or attorney must be imputed to his client. It can be of no advantage to argue that proposition. *Dengler* v. *Dengler*, 196 Ark. 913, 120 S. W. 2d 340; *Merchants' & Planters' Bank* v. *Ussery*, 183 Ark. 838, 38 S. W. 2d 1087.

The only remaining question in this case is settled necessarily by our conclusions, first, that there is no meritorious defense shown; second, that if there were a meritorious defense in the matter of alleged execution of the deed it was waived by neglecting to plead it in due time. We now hold that the negligence of the attorney is attributable to his principal, his client.

Therefore, the decree may not be set aside for any of the causes shown. The sale of the property was made in due time, and, although counsel for the appellants wrote the clerk, counsel filed no pleading to prevent the confirmation thereof and there was no error in confirming the sale. The deficiency judgment was, therefore, a valid obligation and the transfer of the property by White and his wife by voluntary conveyance and sale at the time of this indebtedness, if not made with the actual intent to defraud creditors, must be deemed to have that effect, and the decree setting aside such conveyance on that account was proper. These are all the matters of substantial importance presented on this appeal, and it seems they must all be determined against the appellants.

The decree of the chancery court is affirmed.