O'Neill v. Lyric Amusement Company.

Opinion delivered June 28, 1915.

1. Mortgages—unrecorded mortgage—priority over mechanics' lienholder.—A mortgage, which can not be recorded under the statute, because of a defective acknowledgment, will not take precedence over the holders of mechanics' liens, which have been perfected

under the statute, although the mortgage was executed before the work was done, upon which the mechanics' liens are based.

2. MORTGAGES—DATE OF PRIORITY.—A mortgage dates its priority from the time it is filed for record.

3. MECHANICS' LIENS—MATERIALS FURNISHED—ELECTRIC LIGHTING FIXTURES.—Electric lighting fixtures, installed in a building to be used as a moving picture house, are included within the meaning of the statute, giving a person a lien upon a building for materials furnished in its construction.

4. MECHANICS' LIENS—MATERIALS FURNISHED—TIME FOR FILING LIEN.—The time fixed by the statute for filing a material man's lien, when the materials are delivered from time to time, but under one contract, runs from the date the last item is delivered.

Appeal from Garland Chancery Court; *Jethro P. Henderson,* Chancellor; affirmed.

STATEMENT BY THE COURT.

On May 30, 1913, T. J. O'Neil instituted this action in the chancery court against the Lyric Amusement Company, C. J. Horner, R. Woodward, Missouri Lumber Company, Klein Paint Company, J. C. Rush and William Borman to foreclose a mortgage given by the Lyric Amusement Company on its lease-hold interest in a certain building in Hot Springs, Arkansas, and to have said mortgage declared a prior lien to the claims of the other defendants who had filed mechanics' liens against the building.

On May 21, 1912, G. W. Murphy leased to the Lyric Amusement Company a three-story building in the city of Hot Springs for a period of nine years and seven months from the 1st day of June, 1912. The building had been formerly used as a hotel, and the lessee was given the right to make alterations and improvements in the building by renovating and enlarging it.

On the 31st day of August, 1912, the Lyric Amusement Company executed to the Citizens National Bank of Hot Springs its promissory note for $3,500, payable ninety days after date, and, in order to induce T. J. O'Neil to endorse the note, that it might be accepted by the bank, executed a mortgage on property described as follows:

"The lease-hold interest in and to a three-story building situated at No. 416 Central Avenue, in the said city

of Hot Springs, Arkansas, Garland County, the lower part now being prepared by the said Lyric Amusement Company as a theater; the other two floors of said building, being formerly occupied as a hotel, together with all the personal property that the said Lyric Amusement Company now have in their possession, more particularly described as follows: Three (3) pianos, one moving picture machine, five hundred (500) opera chairs on hand, scenery contracted for and all fixtures and furnishings.''

The Lyric Amusement Company was a corporation, and became insolvent. The chancellor appointed a receiver to take charge of its property, which was subsequently sold under orders of the court. Its lease-hold interest was sold for the sum of $2,300, and the personal property for the sum of $1,200. The court found that the defendants furnished the Lyric Amusement Company materials and had materialmen's liens on the lease-hold interest of the Lyric Amusement Company for the amounts named in the decree, and that the mortgage executed by the Lyric Amusement Company to plaintiff O'Neill was not entitled to be recorded because it was not perfected and acknowledged as required by the statute. A decree· was accordingly entered to the effect that the defendants holding mechanics' liens be first paid out of the proceeds of the sale of the lease-hold interest, and that the remainder should be. paid to the mortgagee. The decree also provided that the proceeds of the personal property should be paid to the mortgagee. The case is here on appeal. Additional facts will be stated in the opinion.

*Rector & Sawyer,* for appellant.

1. It was error to hold that a mortgage must be recorded in order to give it priority over a mechanic's lien. Nothing can be read into a statute unless its language is ambiguous. Sections 4972 and 4974 are the two sections of the whole statute that refer to liens and mortgages, and there is no provision in either section that a mortgage or lien should be recorded. 65 Am. St. Rep. 47; 106 *Id.* 445; 71 Ark. 37; *Id.* 175; 9 Ark. 112; 30 Ark. 572.

2.   The court erred in holding that the material furnished and labor done on the second and third floors, after the execution of the first mortgage would be a prior lien to the mortgage.   In order to make the mechanic's liens superior to the mortgage, it was incumbent upon appellees to show that the labor performed and the materials furnished were contemplated at the time of the execution of the mortgage.   Kirby's Digest, § 4974; 34 Ia. 559; 4 Cal. 175; 44 Ia. 71.

3.   The lien of Rush Brothers was not filed within the time prescribed by law.   Moreover, electric light bulbs or globes, or lamps, are not fixtures or permanent improvements within the meaning of the mechanic's lien law.   79 Pa. St. 403.

*James E. Hogue* and *C. Floyd Huff,* for appellees.

1.   Our statute provides that a mortgage shall be a lien on the mortgaged property from the time it is filed in the recorder's office for record, *and not before,* and that this filing shall be notice to all persons of the existence of such mortgage.   Kirby's Digest, § 5396.

An unrecorded mortgage will not defeat the lien of a stranger to the conveyance against the same property.   9 Ark. 112; 18 Ark. 90; 20 Ark. 190; 41 Ark. 186; 40 Ark. 536-540; 49 Ark. 83; *Id.* 457; 71 Ark. 505; 73 Ark. 78; 97 Ark. 432; 105 Ark. 241.

2.   There was no error in holding that the material furnished and labor done on the second and third floors after the execution of the first mortgage would be a prior lien to the mortgage.   56 Ark. 608.

3.   Rush Brothers' account for materials furnished and labor performed ran from the 8th day of May, 1912, to the 4th day of March, 1913.   Their lien filed April 12, 1913, was within the time allowed by law.

The articles furnished in installing the system of electric lighting were necessary and were supplied to be put together in such manner as to meet the designs of the architect and builder, and the necessities and desires of the owner; and, when so put together, became one system of lighting, every part being installed and used in its

proper place, and each part useless without the others. Rush Brothers are entitled to their lien. 25 R. I. 318; 66 Miss. 339; 22 R. I. 624; 84 Am. St. Rep. 858; 138 N. Y. S. 13; 105 R. I. 875; 154 Ill. App. 308; 105 Ark. 146.

HART, J., (after stating the facts). It is conceded by counsel for the plaintiff that, owing to a defective acknowledgment, his mortgage is not entitled to be recorded; counsel insist, however, that the mortgage having been executed before the materials had been furnished, the plaintiff's lien is prior to that of the materialmen notwithstanding the fact that his mortgage was not entitled to be recorded.

The defendants have asserted a lien under section 4972 of Kirby's Digest, and counsel for the plaintiff contend that because that section does not specify recorded mortgages, it is not necessary that the mortgage should be recorded in order to give plaintiff a lien prior to that of the materialmen. In support of their contention, counsel have cited *Mathwig* v. *Mann* (Wis.), 65 Am. St. Rep. 47, and *Miller* v. *Stoddard,* 50 Minn. 272, but we do not think these cases support their contention.

Under the Wisconsin statute, the only effect of a failure of a mortgagee to record his mortgage was that it became void as against any subsequent purchaser in good faith and for a valuable consideration, and the court held that the parties claiming liens under the statute for material furnished were not subsequent purchasers in good faith, and for a valuable consideration within the meaning of the statute.

The Minnesota statute provides that mortgages, unless recorded, are void as against subsequent purchasers in good faith and for a valuable consideration, or against attachments levied, or valid judgments. The court held that under the statute there was no obligation resting upon the mortgagee to record his mortgage as against mechanics' liens, for the provisions of the statute did not apply to or extend to such liens, because they did not come within the terms of the statute; that in the absence of any statute on the subject, the court was relegated to the com-

mon law by which a registration of mortgages was not required.

(1-2)    The provisions of our statute in regard to mortgages are essentially different.  Section 5395 of Kirby's Digest provides the manner in which mortgages are to be proved and acknowledged, and where they are to be recorded; and section 5396 provides that every mortgage, whether for real or personal property, shall be a lien on the mortgaged property from the time same is filed in the recorder's office for record, and not before; and that the filing shall be notice to all persons of the existence of such mortgage.

In construing these sections, the court has uniformly held that, though the mortgage is good between the parties thereto, though not acknowledged and recorded, it constitutes no lien upon the mortgaged property as against strangers, even though they may have actual notice of its existence. *Smead* v. *Chandler,* 71 Ark. 505.

Persons who have filed mechanics' liens under our statutes, are strangers to the mortgage, and where their liens have been perfected in accordance with the terms of the statute, we are of the opinion that such liens are prior to those acquired by a mortgagee who has not filed his mortgage for record.  We are strengthened in this view by section 4972 of the Digest, which gives materialmen a preference over prior liens with certain exceptions, not now necessary to be named.  The language of the statute is that the materialmen shall have a lien in certain cases in preference to any prior lien or encumbrance or mortgage.  In the connection in which it is used, it is evident to our minds that the framers of the statute used the word "mortgage" in the sense of a valid mortgage which constituted a lien upon the property.  As we have already seen, under our statutes a mortgage is only a lien on the mortgaged property from the time the same is filed for record, and not before.  The mortgage dates its priority from the time it is filed for record.  Supporting this view, see *Morris County Bank* v. *Rockway Mfg. Co.,*

14 N. J. Eq., 189; *Thielman* v. *Carr,* 75 Ill. 385; Rockel on Mechanics' Liens, § 161.

(3) It is conceded by counsel for the plaintiff that all the lien claimants have lienable claims except J. C. Rush; as to him, two contentions are made to defeat his lien. The first is that his claim was not filed within ninety days after the materials were furnished as required by the statute; and the second is that the materials furnished were not lienable claims under our statute.

The property leased by the Lyric Amusement Company was a three-story building formerly used as a hotel, and it was the intention of the company to change it into a theater for moving pictures and vaudeville. This change was provided for in the lease. It will be remembered that the lease was for a period of nine years and seven months from the 1st day of June, 1912. The lower floor of the building was changed and subsequently alterations were made in the second and third floors. To make the building available for use as a moving picture show, it was necessary to exclude sunlight, and use artificial light. Electricity was chosen for that purpose. The Lyric Amusement Company made a contract with J. C. Rush to furnish all the material needed for that purpose. The agreement was that the material should be furnished along as needed and ordered by the company. The walls were decorated in a special manner and it was the intention of the company to install the electric light fixtures in such a manner as to show the decorations to the best advantage. Specially designed fixtures were furnished for that purpose, and it was the intention of the lessee that these fixtures should become a permanent part of the building. They were incorporated into the building in such a manner as to be a part of it. Part of the materials furnished were used in making a sign in front of the building. Globes were furnished which were screwed into sockets made for them. Of course, these globes could be unscrewed and fitted into other sockets, and they would also wear out by constant use. It appears from the record, however, that all the materials furnished by Rush

were incorporated into the building and made a part of it, and that it was the intention of the lessee to install them in the building and make them a permanent part of it. In short, they were installed in the building as a component part of it, and it was intended that they remain there until they wore out. They were essential to the successful operation of the building as a moving picture and vaudeville theater, and were designed for that use. They were reasonably necessary for the purpose for which they were placed in the building and under the circumstances, we think the materials were furnished for the improvement of the building within the meaning of the statute. See Rockel on Mechanics' Liens, section 18; *Scannevin & Potter* v. *Consolidated Mineral Water Co.,* 25 R. I. 318; *J. I. Mulholland* v. *Thompson-Houston Electric Co.,* 66 Miss. 339; *McFarlane* v. *Foley,* 27 Ind. App. 484, 87 Am. St. Rep. 264; *Pacific Sash and Door Co.* v. *Bumiller* (Cal.), 41 L. R. A. (N. S.) 296; *Wahle-Phillips Co.* v. *Fifty-Ninth Street Madison Avenue Co.,* 138 N. Y. S. 13; *Canning* v. *Owen,* 22 R. I. 624, 84 Am. St. Rep. 858.

(4)  In regard to the claim that the lien was not filed in time, it may be said that though the materials were furnished in installments and at intervals, they were furnished under one contract and for the same improvement. The parties intended that they should be included in one account, and, under the circumstances, we think the entire account should be treated as a continuous and connected transaction. In such cases the time fixed by the statute within which to file a lien runs from the date of the last item. Rockel on Mechanics' Liens, par. 94; 27 Cyc. 145; see, also, *Joplin Sash & Door Works* v. *Oklahoma Presbyterian College for Girls* (Okla.), 43 L. R. A. (N. S.) 158.

It follows that the decree must be affirmed.