In re W.E. TUCKER OIL COMPANY, INC., Debtor.

W.E. TUCKER OIL COMPANY, INC.
and Claude S. Hawkins, Jr.,
Trustee, Plaintiffs,

v.

FIRST STATE BANK OF CROSSETT,
Portland Bank, Defendant,
Intervenor.

Bankruptcy No. ED 84–11M.
Adv. No. 84–405M.

United States Bankruptcy Court,
W.D. Arkansas,
El Dorado Division.

Sept. 5, 1985.

Claude Hawkins, Ashdown, Ark., for plaintiffs.

Richard Griffin, Crossett, Ark., for First State Bank of Crossett.

R.J. Brown, Little Rock, Ark., for E.A. Tucker.

Thomas S. Streetman, Crossett, Ark., for Portland Bank.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

The trustee of W.E. Tucker Oil Company, Inc., has filed this action to set aside certain transfers of the debtor's property against First State Bank of Crossett. Port-

land Bank intervened on behalf of the plaintiff. The trustee asserts that the transfers are fraudulent conveyances under 11 U.S.C. § 548 and preferential transfers under 11 U.S.C. § 547. The trustee alleges that the Bank was an insider.

The debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 1, 1984. The debtor is a closely held Arkansas corporation. E.A. "Sonny" Tucker (Sonny Tucker) is the owner of thirty percent of the outstanding shares of stock. He also holds the office of president of the corporation and is the chief operating officer at all relevant times. Maysel A. Tucker, the mother of Sonny Tucker, owns forty percent of the outstanding stock and is chairman of the board of directors. Sue T. Nolan, sister of Sonny Tucker, owns thirty percent of the outstanding stock and holds the office of secretary-treasurer. Sue T. Nolan's husband, Johnny M. Nolan, owns no stock but is a vice president of the company and was active in the operation of the business.

Generally, W.E. Tucker Oil Company, Inc., is engaged in the business of a wholesale gasoline distributor in south Arkansas. Debtor's business also included the ownership of several retail gasoline stations in Monticello, Dermott, McGehee, Crossett, Eudora, Hamburg, Lake Village and Portland, Arkansas. Typically, these properties were leased to operators who sold products supplied by the debtor.

In 1979 Sonny Tucker acquired twenty-five percent of the stock in Davis Industries, Inc., an Arkansas corporation. The other stockholders in Davis Industries, Inc., were Bobby G. Davis, James L. Sanderlin and George E. Locke. Each owned twenty-five percent of the outstanding stock.[1] James L. Sanderlin was also employed by W.E. Tucker Oil Company, Inc., debtor, as an independent certified public accountant and was a close personal friend of Sonny Tucker. James L. Sanderlin prepared the books for both W.E. Tucker Oil

---

**1.** The witnesses often referred to Davis Industries, Inc., as the sister company of Davis Apparel Manufacturing, Inc. Davis Apparel Manufac-

turing, Inc., is owned by the same individuals in the same percentages as Davis Industries, Inc.

Company, Inc., and Davis Industries, Inc. During 1982 and 1983 Sonny Tucker also owned 2,500 shares of stock in First State Bank of Crossett (FSB), the defendant in this action. He was a member of FSB's board of directors and a member of the executive committee until his resignation in November of 1983.

Beginning in January of 1981, FSB made a series of loans to various individuals and entities as follows:

1. Note No. 56316, dated January 9, 1981,

   Maker: Bobby G. Davis, Amount $46,-133.65
   19% interest, Due on 4/9/81 or demand
   Extended 4/16/81—$36,133.65
   Extended 11/19/81—$29,133.65
   Extended 6/6/82—$18,133.65
   Extended 10/25/82—$18,133.65

2. Note No. 56371, dated February 27, 1981

   Maker: J.M. Nolan, Amount $60,000.00
   19% interest, Due on 5/28/81
   Extended 11/19/81—$60,000.00
   Extended 6/6/82—$60,000.00
   Extended 10/25/82—$60,000.00

3. Note No. 56751, dated November 19, 1981

   Maker: James L. Sanderlin, Amount $50,000.00
   17.5% interest, Due on 2/17/82 or demand
   Extended 6/6/82—$50,000.00
   Extended 10/25/82—$50,000.00

4. Note No. 56861, dated January 13, 1982

   Maker: E.A. Tucker, Amount $120,-000.00
   16.5% interest, Due on demand
   Extended 10/25/82—$120,000.00

5. Note No. 56864, dated January 13, 1982

   Maker: J.L. Sanderlin, Amount $23,-500.00
   Due on demand
   Extended 10/25/82—$23,500.00

6. Note No. 56863, dated January 13, 1982

   Maker: Davis Industries, Inc., Amount $20,000.00
   Due on demand
   Extended 10/25/82—$20,000.00

7. Note No. 56962, dated March 2, 1982

   Maker: Davis Apparel Mfg., Inc., Amount
   $240,000.00, Due on demand
   Extended 10/25/82—$228,000.00

On March 2, 1982, Sonny Tucker, on behalf of W.E. Tucker Oil Company, Inc., executed a series of mortgages to FSB to secure the various notes described above. These mortgages granted liens to FSB in various real properties owned by the debtor, W.E. Tucker Oil Company, Inc. Sonny Tucker admitted that the debtor received none of the loan proceeds. Moreover, because of a bank oversight, these mortgages were not recorded in the appropriate offices of the circuit clerk until April 6, 1983, which was within one year before the filing of the bankruptcy petition in this case.

It is not necessary to reach the more difficult question regarding the alleged preferential transfers and FSB's status as an insider because the trustee has established that these transfers should be set aside as constructive fraudulent transfers under 11 U.S.C. § 548(a)(2)(A) and (B)(i), (ii). This section provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or ...

There is no question that property of the estate was transferred because the granting of a lien in real property of the debtor is a transfer within the meaning of 11 U.S.C. § 548. The transfer is deemed to have occurred at the time the lien is perfected if perfection occurs before filing. *In re Hogg*, 35 B.R. 292 (Bkrtcy.D.S.D. 1983); *In re Gurs*, 34 B.R. 755 (Bkrtcy. App. 9th Cir.1983); *In re Lyon*, 35 B.R. 759 (Bkrtcy.D.Kan.1982); *In re Caudy Custom Builders, Inc.*, 31 B.R. 6 (Bkrtcy.D.S.C. 1983). The recording of the mortgages in the office of the circuit clerk on April 6, 1983, constituted the final step under Arkansas law to perfect the transfer of the lien from claims of bona fide purchasers. Ark.Stat.Ann. § 51–1002 (Repl.1971); *Thornton v. Findley*, 97 Ark. 432, 134 S.W. 627 (1911). Perfection occurred within one year of the filing of the petition.

The trustee is also required to prove under Section 548 that the debtor received less than a reasonably equivalent value in exchange for the transfer. 11 U.S.C. 548(d)(2)(A) defines value under this section to mean, "property or satisfaction or securing of a present or antecedent debt of the debtor...." A transfer made to benefit third parties is clearly not made for a fair consideration or for value unless the debtor is also benefited. 4 *Collier on Bankruptcy* ¶ 548.09 (15th ed. 1984); *Matter of Evans Potato Co., Inc.*, 44 B.R. 191 (Bkrtcy.S. D.Ohio, W.D.1984). Since the lien was granted to secure a loan to third parties, there was no economic benefit to the debtor.

The trustee's remaining burden is to establish the elements under 11 U.S.C. § 548(a)(2)(A) and (B)(i) or (ii), either of which is sufficient to set aside the transfer. 4 *Collier on Bankruptcy* §§ 548.03, 548.04 and 548.05 (15th ed. 1984). *In re Bell & Beckwith,* 44 B.R. 656 (Bkrtcy.N.D.Ohio, W.D.1984). The trustee's evidence clearly and unmistakably establishes that the debtor was insolvent before and after the transfers and that after the transfers an unreasonably small amount of capital remained for the debtor to engage in its business.

The evidence concerning the issue of insolvency consisted primarily of the testimony of the debtor's accountant and two exhibits, the debtor's financial statement and the debtor's tax return. The financial statement was for the period July 1, 1982 through June 30, 1983. This is shown as Exhibit 20 to the deposition of James L. Sanderlin which was introduced as Exhibit 2 at the trial. The debtor's tax return for the same period was introduced as Exhibit 17 to Sanderlin's deposition and as Exhibit 2 at the trial. The financial statement indicated that the debtor had a net worth as of June 30, 1983, of $887,413.00. However, the balance sheet on the tax return reflected the debtor's financial condition to be insolvent by the sum of ($510,567.89). Both documents were prepared by James L. Sanderlin, supposedly from the same books and records. Mr. Sanderlin testified that the financial statement, showing a positive net worth, more accurately reflected the debtor's true financial condition. However, the Court does not find his testimony credible. For instance, Mr. Sanderlin was asked by the trustee to explain how he could have prepared a tax return for the debtor for the year ending June 30, 1982, reflecting income of ($406,838.00) and a financial statement for the same period which shows income to be $152,429.00, and both documents be accurate. The witness could offer no explanation.

According to the financial statement, on June 30, 1983, the debtor had cash in the sum of $369,268.00, while the tax return shows cash at $48,837.00. The difference, according to Mr. Sanderlin, was a certificate of deposit in the name of Sonny Tucker and Tucker's family which was treated as an asset of the corporation for purposes of the financial statement. The certificate of deposit was not treated as an asset of the corporation on the bankruptcy petition, nor on the tax return for fiscal 1983.

The June 30, 1983, financial statement reflected receivables to be $1,332,175.00 whereas the tax return lists them at $402,-540.00. This is a difference of $929,650.00, which is about the amount of an alleged

receivable due the debtor from Davis Industries, Inc., not including any liability as a result of the transfers in question. Mr. Sanderlin testified that the receivable from Davis Industries, Inc., was not shown as a receivable on the tax return but was shown on the financial statement.

The account receivable from Davis Industries, Inc., may well have been a contrived account. The evidence on this point is mostly circumstantial but is persuasive. The receivable from Davis Industries, Inc., allegedly resulted from loans made by W.E. Tucker Oil Company, Inc., over a period of time in 1981 through 1983. These loans were not made in the ordinary course of business of W.E. Tucker Oil Company, Inc., but were made, according to Sonny Tucker, to further the shareholder interests of Sonny Tucker and his business associates, James L. Sanderlin, Bobby G. Davis and George E. Locke.

The loans from debtor to Davis Industries, Inc., are not evidenced by promissory notes and are not recorded in any books of account of the debtor. James L. Sanderlin testified that when Davis Industries, Inc., filed bankruptcy, he prepared the schedules and statements of affairs. These schedules failed to reflect any debt owing to W.E. Tucker Oil Company, Inc., from Davis Industries, Inc. The debtor's tax returns during the period of time the loans were purportedly made reflect that the debtor would not have had funds from current operations to make loans in these amounts.[2]

The tax returns were verified under oath as being true and correct and constitute evidence in the nature of an admission by the debtor. These documents reflect the solvency of the debtor as follows:

| | |
|---|---|
| 6–30–80 | $322,007.73 |
| 6–30–81 | 153,171.87 |
| 6–30–82 | (253,666.89) |
| 6–30–83 | (510,568.00) |

Based on this evidence, the Court is persuaded that at the time of the transfer in March, 1983, and many months before that time, the debtor was insolvent. The transfers of the liens in question simply rendered the company further insolvent.

The proof also establishes, without any doubt, that at the time of the transfers, and immediately thereafter, and as a direct result of the transfers, the debtor had an unreasonably small amount of capital with which it could continue doing business. By February, 1984, Exxon, a significant creditor and the source of the debtor's principal inventory, gasoline, had placed the debtor on C.O.D. accepting certified checks only because the debtor had begun to habitually pay for gasoline with insufficient fund checks. Sonny Tucker admitted that trouble began with Exxon as early as November of 1982, but tended to minimize its severity.

Beginning in January of 1983, the debtor's bank accounts were always overdrawn according to the check book reconciliations. Checks were presented to banks almost daily for which there were insufficient funds. The banks would debit the debtor's account an overdraft charge, call the debtor and hold the checks until the debtor could get to the banks, with additional deposits. The debtor had a significant number of overdraft charges beginning in January 1983. There was also evidence of an active check kiting scheme indicating a desperate need to create cash. The debtor's condition deteriorated steadily downward until the petition was filed in February of 1984.

Having found all of the elements of a fraudulent conveyance under 11 U.S.C. § 548, the Court will enter a separate judgment setting aside First State Bank of Crossett's claim of lien on the debtor's property described herein. Since the First State Bank of Crossett has no claim except

**2.** Taxable income (not including depreciation).

| | |
|---|---|
| Year Ending 6/30/80 | $202,066.46 |
| Year Ending 6/30/81 | ( 32,534.18) |
| Year Ending 6/30/82 | (442,501.38) |
| Year Ending 6/30/83 | (701,148.00) |

Net Operating Loss 1980–1983 = ($974,117.10)

its claim of lien, its claim is disallowed in full.

IT IS SO ORDERED.