Leotta Crotts ANDREWS, et al. *v.* All HEIRS and
Devisees OF H.J. BELLIS, Deceased, et al.

88-70                                         759 S.W.2d 532

Supreme Court of Arkansas
Opinion delivered October 31, 1988
[Rehearing denied December 12, 1988.*]

*Young & Finley*, for appellants Leotta Crotts Andrews and
Edna Crotts Gray.

*Gardner, Gardner & Hardin*, by: *Stephen C. Gardner*, for
appellant Burl Harris, and *J.H. Evans*, for appellant TXO
Production Corporation.

*Warner and Smith*, by: *Gerald L. DeLung*, for appellees

---

*Hays, J., would grant rehearing.

Mobil Oil Exploration and Producing Southeast, Inc., Kaneb Operating Co., Ladd Petroleum Corp., Betty Jean Bellis Carver, William Henry Bellis, Jr., Janet Bellis, Barbara Jean Bellis Franklin, Betty Gaunt Whelan, Mimme Lynn Childs, Chifford Eldon Gaunt, and Jeffery William Gaunt.

*Daily, West, Core, Coffman & Canfield*, for appellee Arkla Exploration Company.

JOHN I. PURTLE, Justice. This action commenced when TXO Production Corporation, one of the appellants, filed a complaint in interpleader and petitioned for a declaratory judgment. TXO paid into the registry of the court the sum of $227,000, and asked that the chancellor determine the owner of these proceeds and to whom future payments should be made. Appellants Leotta Crotts Andrews and Edna Crotts Gray, and appellants Burl Harris and TXO, have conflicting claims and seek different results. The interests of the appellees are not in conflict. We are unable to follow all of the arguments presented by the various parties in a chronological manner. The case will be discussed in sufficient detail to explain why we reverse and remand as argued by the appellants Burl Harris and TXO Production Corporation.

This dispute concerns 40 acres of land and mineral rights in Pope County, Arkansas, described as the Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section 5, Township 9 North, Range 21 West. There is no dispute that on January 1, 1903, S.G. Harris and his wife, Mattie Harris, owned all of the interests in this tract of land and on that date executed a warranty deed to O.G. Harris, reserving the mineral rights. On October 27, 1909, O.G. Harris and wife executed a deed, with reservation of mineral rights, to P.L. Browning. Browning, on November 11, 1915, conveyed the property to B.F. Crotts without reserving any interest in the property. On June 14, 1929, John A. Crotts and Emma Crotts, his wife, executed a mineral deed to William Vance. On the face of that deed the following appeared:

> June 25, 1929. Know all men by these presents; That we S.G. Harris and Mattie Harris his wife do relinquish all of our rights and interests to Jno. A. Crotts in the SE 1/4 Southeast 1/4 of SE 1/4 Southeast 1/4 of Section 5, Township 9 North Range 21 West, containing 40 acres,

more or less all in Pope County, Arkansas.

S.G. Harris
Mattie Harris

(Seal) My Com. ex. May 29, 1933.

C.E. Pittenger
Notary Public

The title of all parties except appellants Harris and TXO is dependent upon the above writing contained on the face of the 1929 deed. On the other hand, the interests of Harris and TXO are derived from the title of S.G. Harris.

The case is controlled by our interpretation of the above quoted "deed within a deed." There is no doubt that had the instrument last referred to been offered for recordation as a separate instrument, it would not have qualified because there is no acknowledgment or jurat. The original was never offered in evidence at the trial nor was it established that it had been destroyed. The trial court held that the instrument grafted upon the face of the deed dated June 14, 1929, constituted a quit claim deed and that although it had no jurat or acknowledgment that these defects were cured by Act 101 of 1955, which is codified at Ark. Code Ann. § 16-47-108 (1987). Clearly the instrument purportedly signed by S.G. and Mattie Harris does not contain the elements of a proper acknowledgment as required by Ark. Code Ann. § 16-47-106 (1987).

The curative statute, Ark. Code Ann. § 16-47-108, states that instruments which have been recorded and purport to convey an interest affecting the title to real estate or personal property located in this state, although defective, are cured of such defects. The chancellor held in this case that the statute had cured the defects in the "deed within a deed" and that S.G. and Mattie Harris had conveyed the mineral interest to the Crotts. The writing of June 25, 1929, was not separately recorded. This alleged conveyance was contained in the space on the June 14, 1929, deed just below the description of the property. There is no independent proof that the Harrises ever executed this "deed" except as appears above.

This court held in *McGehee* v. *McKenzie*, 43 Ark.

156 (1884), that a curative statute did not interfere with rights which had already vested. This court has also held that a curative act does not validate a certificate of acknowledgment which the notary fails to sign, even if he has affixed his seal thereto. *Davis* v. *Hale*, 114 Ark. 426, 170 S.W. 99 (1914). The curative statute was again considered by this court in the case of *Pardo* v. *Creamer*, 228 Ark. 746, 310 S.W.2d 218 (1958), where we restated the rule that curative acts do not affect title which has vested before the effective date of the act. In *Pardo* we held that the curative statute cannot "supply an acknowledgment when in fact there is none."

■ The so called "deed within a deed" was not a proper instrument for recordation. The fact that it appeared within an instrument which was duly recorded does not cure the defect of the lack of acknowledgment. Additionally, title to the mineral interests in question here had already vested in the Harris line of ownership. Although it may have been proper for the chancellor to have received this instrument into evidence, it was clearly error for him to decree that the defective "quit-claim deed" was cured by Ark. Code Ann. § 16-47-108.

Since we hold that the June 25, 1929, writing by S.G. Harris and Mattie Harris on the face of the June 14, 1929, mineral deed did not vest title to the mineral interest in John Crotts, it becomes unnecessary to discuss the claim between the Crotts heirs. The case is remanded to the trial court for the purpose of doing all things necessary to vest title in Burl Harris and TXO Productions, Inc.

Reversed and remanded.

HAYS, J., dissents.

GLAZE, J., concurs.

STEELE HAYS, Justice, dissenting. On the face of the mineral deed, properly acknowledged and recorded, from John and Emma Crotts to William B. Vance appeared a quitclaim deed dated June 25, 1929. This quitclaim deed granted the previously reserved mineral interest of S.G. Harris to John Crotts. The majority holds that because the quitclaim deed was not properly acknowledged the mineral interests should not pass to the Crotts heirs, but instead vest in the heirs of S.G. Harris.

Admittedly, there was no acknowledgment of the quitclaim

deed as recorded June 25, 1929. However, an acknowledgment is not necessary to make the transfer of title via the quitclaim deed effective. A quitclaim deed is a substantive mode of conveyance, and is effective to carry all the right, title, interest, claim and estate of the grantor as a deed with full covenants. *Smith* v. *Olin Industries, Inc.*, 224 Ark. 606, 275 S.W.2d 439 (1955).

It is not necessary for a deed to be acknowledged. However, in order to be recorded, a deed must be acknowledged. Recordation then provides notice to the world. The majority states that, "the so called 'deed within a deed' was not a proper instrument for recordation." But recordation only becomes important in order to give notice to subsequent bona fide purchasers and to provide a self-authenticating record.

The Chancellor found that Ark. Code Ann. § 16-47-108 (1987) cured the quitclaim deed's lack of an acknowledgment and deemed the June 25, 1929, quitclaim deed "acknowledged." In *Pardo* v. *Creamer*, 228 Ark. 746, 310 S.W.2d 218 (1958), we held that the curative provisions of Ark. Code Ann. § 16-47-108 (1987) could not supply an acknowledgment where there was none, and the chancellor erred in holding the quitclaim deed "cured" and "acknowledged." Yet, this error is simply harmless because the acknowledgment is not vital to the validity of the underlying transaction, i.e. the transference of the mineral interest from S.G. Harris to John Crotts. *Pardo* concerned a petition for adoption and whether its recordation constituted a declaration of heirship. In order to make an heirship declaration valid, by statute, it must be acknowledged. Therefore, in *Pardo* acknowledgment was essential before recordation was proper, and only with the proper recording of the declaration could it have any force. This is not the situation before us. The quitclaim deed transfers the grantor's interest in the property whether or not the instrument is acknowledged. *Harvey* v. *Ledbetter*, 219 Ark. 27, 240 S.W.2d 18 (1951); *McSwain* v. *Chrisweld*, 213 Ark. 775, 213 S.W.2d 383 (1948). Recordation provides notice to subsequent bona fide purchasers and acknowledgment is only needed to ensure recordation which is not vital to the underlying transaction.

According to the June 25, 1929, quitclaim endorsement the grantor, S.G. Harris, appeared before a notary public, an officer

having the authority to take the acknowledgment, Ark. Code Ann. § 16-47-103(a) (1987), and executed the deed conveying the mineral interest to John Crotts. Evidence of this transaction was then transcribed by the clerk into the Pope County Record Book noting the name of the Notary Public and when his commission expired. However, this transcription fails to note a certificate of acknowledgment. The copy as it appeared in the Pope County Record Book provides secondary evidence of the execution of this deed.

The crux of the majority's opinion focuses on the tangential issue of acknowledgment, with a veiled intimation that this conveyance may not even have occurred. However, there was no direct evidence of fraud and if such claims had a basis in fact they would surely have arisen before sixty years elapsed. I believe the chancellor, viewing the credibility of the witnesses and the totality of the evidence, was in the best position to determine the validity of the 1929 quitclaim deed. *Box* v. *Dudeck*, 265 Ark. 165, 578 S.W.2d 567 (1979). Therefore, I respectfully dissent.