**In re Rodney and Jacquelyn
BEENE, Debtor(s).**

**No. 6:05–BK–74686M.**

United States Bankruptcy Court,
W.D. Arkansas,
Hot Springs Division.

Nov. 27, 2006.

---

C. Marc Honey, Honey Law Firm, Hot Springs, AR, for Debtors.

## AMENDED ORDER

JAMES G. MIXON, Bankruptcy Judge.

Comes now the Court, sua sponte, pursuant to Federal Rule of Bankruptcy Procedure 9024 and issues this corrected Order as a substitute for the Order entered in error on October 23, 2006.

On June 27, 2005, Rodney Cameron Beene and Jacquelyn Suzanne Beene ("Debtors") filed a voluntary petition for relief under the provisions of Chapter 7 of the United States Bankruptcy Code. The Debtors converted their case to Chapter 13 on October 31, 2005, and on November 23, 2005, filed their proposed plan, to which Jo–Ann Goldman, the Chapter 13 Trustee, objected on December 16, 2005. On February 24, 2006, the Debtors amended their plan and some of their schedules. The Trustee subsequently withdrew the objection to the original plan on February 27, 2006, but on March 14, 2006, filed an objection to confirmation of the amended chapter 13 plan.

A hearing was held on April 12, 2006, in Hot Springs, Arkansas, on the Trustee's objection to confirmation of the amended plan, and the matter was taken under advisement. The matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Court has jurisdiction to enter a final judgment in the case.

The Trustee objected to confirmation of the modified plan on the following bases:

1. 11 U.S.C. 1325(a)(3) plan has not been proposed in good faith. In that the debtors' plan proposes to pay the claim of Chase Manhattan Mortgage outside the supervision and control of the Chapter 13 Trustee while the Trustee has information and belief that the claim of Chase Manhattan Mortgage may not be properly perfected and would require the debtors produce the mortgage and underlying note in order to make determination as to the perfection of the creditor.

2. 11 U.S.C. 1325(a)(4) creditors would receive greater distribution under a Chapter 7 proceeding. If the Court determines the debt owed Chase Manhattan Mortgage is not properly perfected, the debtors would have available unencumbered property which would require unsecured debts to be paid in full.

3. 11 U.S.C. 1325(a)(6) the debtor will not be able to make all the payments or to comply with the plan. In that based on debtors' budget, plan is under funded.

4. 11 U.S.C. 1325(a)(5) plan does not provide for the unlisted secured claim of Conines in the amount of $230.65 for a washing machine.

5. 11 U.S.C. 1322(a)(1). The plan does not commit to the supervision and control of the Trustee funds sufficient for the execution of the plan. In that the debtors' new plan base of $17,178.00 for a 60 month plan is insufficient to accomplish the proposes [sic] as set forth in the modified plan.

(Objection to Confirmation of Plan as Modified on 2/24/06.)

The Debtors' original plan proposed payments to the Trustee of $215.00 for sixty months. The Debtors proposed to pay over the life of the plan administrative claims and a secured claim to Summit Bank valued at $11,440.00 with interest at the rate of 8% per annum. Summit Bank would receive $200.58 per month on its secured claim.

Unsecured creditors were to be paid a pro rata dividend, which the Trustee testified would be zero. The Debtors proposed to pay outside the plan a debt to Chase Manhattan Bank ("Chase"), described as a "homestead mortgage," and an obligation to Elk Horn Bank & Trust ("Elk Horn"), described as a second homestead mortgage also secured by equipment. (Trustee's Ex. 3.)

The plan did not specify the amounts of the payments to be made outside the plan. However, Debtor's Exhibit '1', which is Amended Schedule J, lists a home mortgage expense of $1,001.00 per month.[1] The expense item does not indicate whether this sum includes payments to both creditors to be paid outside the plan.

The Trustee testified that the original plan proposed to pay the Trustee's fee of $580.00, an attorney's fee of $1050.00, and Summit Bank's secured claim of $11,440.00 plus 8% interest per annum. These sums total $13,070.00 plus 8% interest on the $11,440.00 claim of Summit Bank. The monthly plan payments of $215.00 total $12,900.00 if paid for 60 months. Therefore, the Trustee concluded that the plan base was insufficient to pay administrative and secured claims under the original plan.

The Debtors' modified plan changed only two aspects of the original plan. It increased the monthly plan payments to $320.00 a month and modified the value of Summit Bank's secured claim to $13,745.00, increasing monthly payments to Summit Bank to $279.00. The Debtors did not offer testimony or other evidence explaining how they would be able to pay the increased plan payment of $320.00 despite the fact that Amended Schedule J indicates they had disposable income of only $214.00 a month with which to fund a plan.

The Trustee did not testify as to the precise amount of the Trustee's fees and attorneys fees due under the modified plan. Although it is apparent that the plan base under the modified plan was increased to $19,200.00 (60 months × $320.00), the Trustee offered no evidence on the issue of whether the new plan base would suffice to defray the administrative claims and the increased monthly payment to Summit Bank.[2]

With regard to the first and second allegations in the objection to the modified plan, the Trustee testified about the mortgage dated November 24, 2003, and filed for record on November 25, 2003. (See Trustee's Ex. 4.) The mortgage was given to Summit Bank to secure the repayment of the sum of $135,450.00.[3] The Trustee argues the mortgage is defective because it does not contain a proper acknowledgment.

In their schedules, the Debtors value their homestead at $153,000.00 with total encumbrances of $148,376.00. (Trustee's Ex. 1, Schedule A—Real Property.) The

---

1. Defendants' Exhibit 1 was admitted without objection, but the Amended Schedule J does not appear to have been filed. The original Schedule I listed income of $1205.00 and original Schedule J listed total expenses of $3010.17. Amended Schedule I listed income of $2483.00 and Amended Schedule J listed total expenses of $2269.00.

2. The Trustee's Objection to Confirmation of Plan as Modified alleges that the "debtors' new plan base of $17,178.00 for a 60 month plan is insufficient ..." However, the plan

base referred to seems to have been erroneously calculated since $320.00 × 60 = $19,200.00, not $17,178.00.

3. The parties never introduced evidence that the original mortgage to Summit Bank, introduced as Trustee's Exhibit 4, was later assigned to Chase, although both sides appear to agree on this fact in their argument. The secured claim of Summit Bank that is treated in the plan is unrelated to the first mortgage originally granted to Summit Bank and later assigned to Chase.

schedules reflect a first mortgage in favor of Chase secured by the Debtors' homestead in the sum of $133,805.00 and a second mortgage in favor of Elk Horn secured by the Debtors' homestead, equipment, and inventory in the total sum of $27,326.63. (Trustee's Ex. 1, Schedule D—Creditors Holding Secured Claims.) The equipment and inventory securing Elk Horn's claim are valued at $20,300.00. Elk Horn's claim would then be partially secured by the homestead in the amount of $7026.63. However, using the figures supplied on Schedule A—Real Property results in a different value for Elk Horn's claim. On that schedule, total encumbrances on the homestead are $148,376.00. Subtracting Chase's claim of $133,805.00 from total encumbrances yields the sum of $14,571.00 as the value of Elk Horn's claim. From the evidence before it, the Court can only conclude that the amount of Elk Horn's claim secured by the homestead is between $7026.63 and $14,571.00.

## DISCUSSION

The Trustee alleges, among other things, that the plan cannot be confirmed because unsecured creditors in this case would receive a greater distribution in a Chapter 7 than under the proposed Chapter 13 plan. The Trustee bases her argument on the premise that, were this a Chapter 7 case, a Chapter 7 trustee could avoid the mortgage lien of Chase Manhattan Mortgage as unperfected because the mortgage's attached acknowledgment is defective. Thus, any value in the homestead that is encumbered by the defective first mortgage would become available for distribution to unsecured creditors in a Chapter 7 case.

The Bankruptcy Code arms a Chapter 7 trustee with the following avoidance powers:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;

. . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

11 U.S.C. § 544(a)(1) & (3) (2000).

The case of *In re Bearhouse* discussed the issue of whether a defective acknowledgment on a mortgage rendered the mortgage lien unperfected and, therefore, subject to the Trustee's avoidance powers under section 544. *Hawkins v. First Nat'l Bank (In re Bearhouse, Inc.),* 99 B.R. 926 (Bankr.W.D.Ark.1989). In that case, this Court made the following observation with regard to section 544 powers and defective acknowledgments on mortgages:

This section gives to the trustee a cause of action to avoid most prepetition liens unless the liens were perfected under state law prior to the date the petition was filed. *Shuster v. Doane (In re Shuster),* 784 F.2d 883, 884 (8th Cir. 1986); *In re Wallace,* 61 B.R. 54, 56 (Bankr.W.D.Ark.1986); 4 Collier on Bankruptcy ¶ 544.01 (15th ed.1988). With its status as an "ideal creditor," the trustee is afforded the same rights

and priorities in regard to real property that a judgment lien creditor or subsequent bona fide purchaser would have over an unperfected mortgage lien. 4 Collier on Bankruptcy ¶ 544.02 (15th ed.1988). A mortgage lien is perfected against subsequent encumbrances by recording the mortgage in the office of the circuit clerk of the county in which the mortgaged lands are situated. Ark. Code Ann. § 18–40–102 (1987). The recording constitutes constructive notice of the prior encumbrances and perfects the lien against claims of bona fide purchasers or subsequent encumbrances. *Id.; W.E. Tucker Oil Co. v. First State Bank of Crossett (In re W.E. Tucker Oil Co.),* 55 B.R. 78, 81 (Bankr.W.D.Ark.1985), *aff'd,* 64 B.R. 183 (W.D.Ark.1986); *In re Watson,* 99 F.Supp. at 54–55; *O'Neill v. Lyric Amusement Co.,* 119 Ark. 454, 459, 178 S.W. 406, 408 (1915); *Thornton v. Findley,* 97 Ark. at 436, 134 S.W. at 628.

Before a mortgage may be properly filed for record, it must comply with applicable state law regarding acknowledgment of deeds for conveyance of real estate. Ark.Code Ann § 18–40–101 (1987). See Ark.Code Ann § 16–47–101 to –218, 18–12–201 to –209 (1987). Ark.Code Ann. § 18–12–206(a) requires that the person acknowledging the mortgage must appear "in person before a court or officer having the authority by law to take the acknowledgment." *See also* Ark.Code Ann. § 16–47–106(a) (1987). In most instances, an instrument which is not properly acknowledged under Arkansas law does not constitute constructive notice to third parties and does not entitle the defectively acknowledged instrument to priority over subsequent encumbrances or subsequent bona fide purchasers. *See, e.g., Cumberland Bldg. & Loan Ass'n. v. Sparks,* 111 F. 647, 649–50 (8th Cir.1901); *Dean v. Planters Nat'l Bank of Hughes,* 176 F.Supp. 909,

912–13 (E.D.Ark.1959); *Wyatt v. Miller,* 255 Ark. 304, 306–07, 500 S.W.2d 590, 591 (1973); *Bank of Weiner v. Jonesboro Trust Co.,* 168 Ark. 859, 861, 271 S.W. 952, 953 (1925); *O'Neill v. Lyric Amusement Co.,* 119 Ark. at 459, 178 S.W. at 408; *Dodd v. Parker,* 40 Ark. 536, 540 (1883); *Main v. Alexander,* 9 Ark. at 117.

*In re Bearhouse,* 99 B.R. at 927.

In this case, unlike the *Bearhouse* case, the mortgage is not acknowledged at all, and the defect, therefore, is apparent on its face. (*See* Trustee's Ex. 4.) The instrument in question only contains a jurat by a notary public, which simply states "Given under my hand and official seal this 24th day of November, 2003. [Signed by] Marla F. Looper." (Trustee's Ex. 4.)

Justice Millwee, on behalf of the Arkansas Supreme Court, explained the difference between a jurat and an acknowledgment:

> An acknowledgment is a formal declaration or admission before an authorized public officer by a person who has executed an instrument that such instrument is his act and deed. It is distinguished from a jurat in that a jurat is a simple statement that an instrument is subscribed and sworn to or affirmed before a proper officer without the further statement that it is an act or deed of the person making it. 1 CJS Acknowledgments § 1; *Jemison v. Howell,* 230 Ala. 423, 161 So. 806, 99 A.L.R. 1511 ... Nor can the curative provisions of Ark.Stat. Section 49–213, designed to cure defective acknowledgments be held to supply an acknowledgment when, in fact there is none. *Jackson v. Hudspeth,* 208 Ark. 55, 184 S.W.2d 906.

*Pardo v. Creamer,* 228 Ark. 746, 751, 310 S.W.2d 218, 221 (1958). *See also Andrews v. All Heirs and Devisees of Bellis,* 297 Ark. 3, 6–7, 759 S.W.2d 532, 534

(1988)(Hays, J., dissenting) ("admittedly there was no acknowledgment of the quit-claim deed as recorded June 25, 1929 . . . Recordation provides notice to subsequent bona fide purchasers and acknowledgment is only needed to ensure recordation . . .").

■ The Debtors argue that section 18–12–208 of Arkansas Code Annotated cures the defect in the mortgage. However, the curative statute does not act to "supply an acknowledgment when in fact there is none." *Pardo v. Creamer*, 228 Ark. at 751, 310 S.W.2d at 221 (citing *Jackson v. Hudspeth*, 208 Ark. 55, 184 S.W.2d 906 (1945)). Applying the case law and statutes to the instant case, the Court finds that the jurat attached to the mortgage is not an acknowledgment and, therefore, the mortgage lien is unperfected.

Under the provisions of 11 U.S.C. § 1325(a)(4), the plan must treat unsecured claims in the following way:

> (4) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date.

11 U.S.C. § 1325(a)(4) (2000).

This provision is referred to as the "best interest of creditors test." 8 Collier on Bankruptcy ¶ 1325.05[1] (Alan N. Resnick & Henry J. Sommer et al. eds., 15th ed. rev.1993). The test requires that a plan "provide for property to be distributed in settlement of each allowed unsecured claim in an amount no less than the amount that would be paid if the estate of the debtor were liquidated under chapter 7." *Id.* at ¶ 1325.05[2].

■ If this were a Chapter 7 case, the mortgage lien of Chase could be avoided by the Chapter 7 Trustee pursuant to 11 U.S.C. § 544 because it is not perfected. If the Trustee could sell the property in question for its scheduled value of $153,000.00, the Trustee would be required to pay the value of Elk Horn's second mortgage lien to the extent the lien encumbers the property. The schedules indicate that the property is encumbered by Elk Horn's secured claim totaling between $7026.63 and $14,571.00. After payment of Elk Horn's claim, the Trustee would have $138,429.00 to $145,973.37 to pay the unsecured creditors. The Debtors would not be entitled to proceeds from the sale of the homestead because they have not claimed any exemption in the property in question. (Trustee's Ex. 1, Schedule C–Property Claimed As Exempt.)

The Debtors list unsecured claims totaling $46,123.13. (Debtors' Ex. 2, Amended Schedule F—Creditors Holding Unsecured Nonpriority Claims.) If the first mortgage is set aside by the Trustee, Chase's claim of $133,805.00 would be added to the unsecured claims, which would then total $179,928.13. Dividing $138, 429.00 to $145,973.37 by $179,928.13 yields a dividend of approximately $0.77 to $0.81 on the dollar that would be available to pay unsecured creditors.[4]

The Debtors' original plan proposed to pay unsecured creditors a zero distribution. The modified plan proposes to pay $320.00 a month, which means that $41.00 a month, or $2460.00 total over the life of the plan, will be available to pay the trustee's fee, attorney's fees, and claims of unsecured creditors. The remainder will be paid on Summit Bank's secured claim at $279.00 a month. Therefore, the modified

---

4. This sum would be diminished, of course, by administrative claims incurred in setting aside the mortgage and selling the property as well as Trustee's fees and attorney's fees. The record contains no estimation of these costs.

plan does not comply with 11 U.S.C. § 1325(a)(4) in that it proposes to pay unsecured creditors only pennies above the zero pro rata dividend proposed by the original plan. Certainly the pro rata dividend of the modified plan is nowhere near the amount unsecured creditors would receive in a Chapter 7.

The Debtors argue that they can amend the schedules and claim their homestead as exempt; however, this is no answer to the Trustee's objection because the Debtors still do not claim the property as exempt. Furthermore, the mortgage lien that a Trustee could avoid under section 544 would not result in property subject to an exemption claim. After a debtor has voluntarily transferred a lien in property to a creditor and the Trustee has successfully avoided that lien, the debtor may not subsequently exempt the property that was subject to the lien. 11 U.S.C. § 522(g) (2000).

### CONCLUSION

The modified plan violates the section 1325(a)(4) because unsecured creditors would receive a greater distribution in a Chapter 7 liquidation. Additionally, the plan violates Section 1325(a)(6) in that the Debtors do not appear to have enough disposable income to fund the increased plan payment of $320.00. Therefore, for the reasons stated herein, the Trustee's objection to the modified plan is sustained, and the Debtors have twenty (20) days to file a modified plan consistent with this opinion or convert to Chapter 7. If no modified plan is filed or motion to convert is filed within twenty (20) days, the case will be dismissed.

IT IS SO ORDERED.