J. A. HUGHES, William A. HUGHES and
J. A. HUGHES, Jr. *v.* James McCANN,
NORTHWESTERN MUTUAL LIFE INSURANCE CO.,
Charles GRIFFIN, Henry CHAMBERS, and
LONOKE PRODUCTION CREDIT ASSOC.

CA 84-38                                      678 S.W.2d 784

Court of Appeals of Arkansas
Division I
Opinion delivered November 7, 1984

*Gene O'Daniel,* for appellants.

*John C. Calhoun, Jr.,* and *Charles A. Walls, Jr.,* for appellee Lonoke Production Credit Assoc.

*Timothy Davis Fox* and *W. Russell Meeks, III,* for appellee Griffin.

*Plegge & Church,* by: *John Plegge,* for appellee Northwest Mutual Life Ins. Co.

*Howell, Price & Trice,* by: *Ron Hope,* for appellee Chambers.

*Lessenberry & Carpenter,* by: *Jack Lessenberry,* for appellee McCann.

Tom Glaze, Judge. Appellants brought suit against appellees alleging fraud. The trial court dismissed the action as to all the appellees because appellants failed, in their complaint, to state a cause of action and because their suit was barred by the statute of limitations. Here, on appeal, appellants argue that the trial court erred in dismissing their suit.

In their complaint, appellants stated that in 1968 they farmed three hundred fifty-five acres of land near Keo in Lonoke County. At that time, appellees James McCann, Charles Griffin and Henry Chambers offered to finance appellants' business if they would farm an additional tract near Hope. Their agreement called for Northwestern Mutual Life Insurance Company (NMLIC), McCann's principal, and Lonoke Production Credit Association (LPCA), the principal of Griffin and Chambers, to lend appellants enough money to operate both farms in return for land, crop and equipment mortgages on the two farms. In their complaint, appellants stated that appellee Griffin

promised them that they would have five years to make their operations profitable. Appellants claim this promise was false and made with fraudulent intent. From 1968 to 1971, appellants further expanded their farming operations and continued to take ever greater loans from NMLIC and LPCA. Appellants claimed in their complaint that these two institutions made the loans to them to render them financially dependent. In 1971, appellee LPCA stopped lending money to the appellants. They claim LPCA did so to drive them into default on their loans, which would enable both LPCA and NMLIC to foreclose on the mortgages they held on appellants' land, equipment and crops. Appellants assert in their complaint that LPCA and NMLIC forced them to sell the Keo and Hope parcels by threatening to foreclose on the mortgages if they did not sell. Appellants sold the Hope tract to a Mr. Carroll Ferguson, a buyer obtained by LPCA and NMLIC. According to appellants' complaint, the assumption of their debt by Ferguson was part of LPCA's and NMLIC's scheme to defraud them in that: (1) Ferguson was inexperienced as a farmer and not otherwise qualified to assume their sizeable loan; (2) LPCA made loans to Ferguson, who was not within the jurisdiction of limits of LPCA to make loans; (3) LPCA made crop loans to Ferguson for five years when he failed to plant any crops in any of those years and continued to loan Ferguson money even after the loans were not repaid; (4) NMLIC lent money to Ferguson after he failed to repay earlier loans; and (5) LPCA and NMLIC had not permitted appellants to miss even one year's worth of loan repayments. Appellants also note in their complaint that they were falsely promised that they could retain their Keo farm if they sold the Hope property — in fact, in the summer of 1971, LPCA and NMLIC forced appellants to sell the Keo tract. Appellants further alleged that they discovered the fraudulent scheme in 1980 by searching through public records in Hempstead County. In these records, appellants found (1) that Ferguson never repaid his loans to LPCA or NMLIC and that neither ever brought any legal action to force Ferguson, after he defaulted, to sell the property; (2) that LPCA made improper loans to Ferguson; and (3) farming operations

were never conducted on any of the property. Appellants' claim $9 million in actual and punitive damages as a result of appellees' fraudulent scheme.

Appellees maintain that the trial court was correct in dismissing the appellants' suit because their pleadings failed to·state a cause of action and because the pertinent statute of limitations had run. While we may not agree with the trial court's finding that appellants' pleading failed to state a cause of action, we do agree that appellants' action is barred by Ark. Stat. Ann. § 37-206 (Repl. 1962), which provides a three-year statute of limitations for actions sounding in fraud. As a consequence, we need only address and discuss the statute of limitations issue.

According to appellants' complaint, the appellees, fraudulent activity began *at the latest* in January, 1971, when appellees refused to lend them any more money. Appellants commenced this action in November of 1981. Clearly, the appellants' cause of action is barred by § 37-206 unless the running of the statute of limitations was tolled. Appellants argue that the statute was tolled because appellees committed subsequent fraudulent acts to cover up the existence of their cause of action based on appellees' representations concerning financing. Affirmative action on the part of the person charged with fraud to conceal a plaintiff's cause of action will toll the running of the statute of limitations. *Walters* v. *Lewis,* 276 Ark. 286, 634 S.W.2d 129 (1982).

Appellants contend that they discovered appellees' cover-up in late 1979 or early 1980 by searching public records in Hempstead County. In that search, the appellants found mortgages on the property near Hope that had been recorded to Mr. Ferguson from 1971 until 1976. From these records, appellants argue they learned that the appellees had Ferguson purchase appellants' land near Hope and then used him to cover up appellees' original scheme to defraud the appellants. Just how this cover-up operated is not made clear in appellants' argument.

Because the Ferguson mortgages were recorded, ap-

pellants were on constructive notice of such mortgages as far back as 1971 and no later than 1976 — five years prior to their filing this action. *See* Ark. Stat. Ann. § 16-114 (Repl. 1979). In *Teall* v. *Schroder,* 158 U.S. 172 (1895), the United States Supreme Court held that in fraud actions, for purposes of determining when the statute of limitations begins to run, parties alleging fraud are charged with knowledge of any pertinent real estate conveyances from the time such conveyances are placed in public records. Appellees urge that filing for public record and concealment are mutually exclusive. We agree.

Appellants do not argue that appellees committed any affirmative acts that kept them from examining these public records in Hempstead County before 1980. Had appellants examined those records, they could have made themselves aware as early as 1971 of appellees' alleged cover-up of their original fraudulent action. Fraud does suspend the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *City National Bank* v. *Sternberg,* 195 Ark. 503, 114 S.W.2d 39 (1938). Appellants' failure to examine such records in Hempstead County must be attributed to their own lack of reasonable diligence. Because appellants have not shown that appellees committed any affirmative acts to conceal their cause of action from them, the three-year statute of limitations of Ark. Stat. Ann. § 37-206 was not tolled, and appellants' action is thereby barred.

Affirmed.

CRACRAFT, C.J., and MAYFIELD, J., agree.