# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

00-6066EA

_____

| | |
|---|---|
| In re: John Samuel Marlar | * |
| | * |
| Debtor | * |
| | * |
| Renee S. Williams | * |
| | * |
| Plaintiff - Appellee | * |
| | *  Appeal from the United States |
| v. | *  Bankruptcy Court for the |
| | *  Western District of Arkansas |
| John Samuel Marlar; | * |
| | * |
| Defendant - Appellant | * |
| | * |
| William Bradley Marlar; | * |
| Cheyla Evans Marlar | * |
| | * |
| Defendants | * |

_____

Submitted: August 10, 2000
Filed: September 12, 2000

_____

Before KOGER, Chief Judge, KRESSEL and SCHERMER, Bankruptcy Judges.

_____

KOGER, Chief Judge.

The Chapter 7 trustee, Renee S. Williams, filed an adversary proceeding under 11 U.S.C. § 544 and the Arkansas Fraudulent Transfer Act, Ark. Code Ann. § 4-59-201, et seq., to recover three parcels of farm property alleging a pre-petition fraudulent transfer by the debtor, John S. Marlar, to his son.  The

bankruptcy court[1] granted summary judgment in favor of the trustee and set aside the transfer. The debtor appeals. We affirm.

## Background

On December 19, 1986, two days prior to his marriage to Paula Marlar Davis, the debtor, John S. Marlar, deeded three parcels of farm property consisting of approximately 712 acres located in Ouachita County, Arkansas and Dallas County, Arkansas to his son, William Bradley Marlar. Prior to the transfer the debtor had owned fee title to 600 acres and owned an undivided one-half interest in a 112 acre tract. The consideration for the transfer was stated as ten dollars with love and admiration. Although it appears that the debtor gave the deed to his son, the deed was not recorded. After the transfer, the debtor remained in possession of the property and continued to pay the real estate taxes. In 1993, the debtor valued this property at $335,000.00 in a loan application. In 1995, Paula Marlar Davis filed for divorce from the debtor. During the course of a very bitter divorce proceeding, the deed was recorded on June 30, 1995, in the Office of the Dallas County Recorder, and was recorded on July 3, 1995, in the Office of the Ouachita County Recorder. Subsequently, the divorce court granted the divorce and awarded Paula Marlar Davis a judgment against the debtor in the amount of about $52,000.00 for her interest in the couple's personal property, for improvements made to the debtor's real estate and for attorney's fees, and awarded her an equitable lien on any ownership interest that the debtor had in the three parcels of property transferred to his son.

Following the divorce, Paula Marlar Davis filed an action in state court against the debtor and his son seeking to set aside the transfer of the three parcels of farm property. Paula Marlar Davis alleged that the debtor conveyed the land to his son in an effort to defeat her marital property rights in a pending divorce action; that the debtor transferred the land with the actual intent to hinder, delay or defraud creditors in violation of Ark. Code Ann. § 4-59-204(a)(1); that the debtor conveyed the property to his son without receiving a reasonably equivalent value in exchange for the transfer; and that after the transfer the debtor was left with an unreasonably small amount of capital with which to operate his farming business in violation of Ark. Code Ann. § 4-59-204(a)(2). In an order filed June 5, 1998, the state court ruled against her. The state court found that the debtor was a single person when he transferred the property to his son in

---

[1] The Honorable Mary Davies Scott, United States Bankruptcy Judge for the Eastern and Western Districts of Arkansas.

1986, that Paula Marlar Davis had no marital interest in the real estate prior to its transfer, that the debtor had delivered the deed to his son in 1986, that love and affection served as sufficient consideration for the conveyance, that the conveyance was not ineffective as to Paula Marlar Davis and that there was no evidence when the deed was transferred in 1986 that the debtor intended to defraud his creditors. The state court opined:

> The fact that the deed from John Marlar to Brad Marlar was not recorded does not render it ineffective. If it was executed and delivered and for sufficient consideration then title to the land was effectively conveyed from the grantor to the grantee. The failure to record the deed would only affect competing claims to the title.

Further, the state court ruled that there was "substantial evidence" presented which indicated that Paula Marlar Davis knew from the beginning of her marriage to the debtor that the debtor did not own fee simple title to the real estate in question.

On June 25, 1998, an involuntary petition for relief under Chapter 7 was filed against the debtor. It appears that Paula Marlar Davis was one of the petitioning creditors. On December 18, 1998, the bankruptcy court entered an order for relief in the involuntary case. On June 28, 1999, the Chapter 7 trustee filed a three-count complaint against the debtor, the debtor's son and the son's wife seeking to set aside the transfer of the three parcels of farm land as fraudulent under 11 U.S.C. § 544 and Ark. Code Ann. § 4-59-201, et seq. In Count I, the trustee sought avoidance of the transfer under Ark. Code Ann. § 4-59-204(a)(1); in Count II, the trustee sought avoidance under Ark. Code Ann. § 4-59-204(a)(2); and in Count III, the trustee sought avoidance under Ark. Code Ann. § 4-59-205. The debtor filed an answer asserting that the property was transferred in 1986 when he tendered the deed to his son; that due consideration existed for the transfer; and that the trustee's action was barred by res judicata arguing that the Arkansas state court had already ruled in favor of the debtor in a similar action brought by Paula Marlar Davis. The son and his wife filed an answer to the trustee's first amended complaint contending they had lawfully owned the property since 1986.

Upon the trustee's motion, on March 2, 2000, the bankruptcy court granted partial summary judgment in favor of the trustee on Count II and Count III of the complaint. The bankruptcy court determined that the effective date of the transfer was the date the deed was recorded in 1995; that the transfer was made without reasonably equivalent value; and that after the deed was recorded the debtor had virtually no assets of any value from which to satisfy a number of debts then in existence, thus, the

3

conveyance rendered the debtor insolvent. The bankruptcy court rejected the debtor's argument that the trustee's action was barred by either res judicata or collateral estoppel. The court observed that the Chapter 7 trustee, who represents all the creditors of the bankruptcy estate, was neither a party nor was in privity with Paula Marlar Davis in the prior state court action. The bankruptcy court directed the debtor's son and his wife to convey all of the real estate in question to the Chapter 7 trustee.

The bankruptcy court rejected the debtor's post-summary judgment order attempt to submit evidence that he was solvent when the deed was recorded in 1995. The court ruled that the materials which the debtor sought to submit were in existence at the time he was required to respond to the motion for summary judgment, and he failed to present the evidence in a timely manner.

Subsequently, the bankruptcy court entered a final judgment in the adversary proceeding on June 5, 2000. Only the debtor appeals from the bankruptcy court's grant of summary judgment in favor of the trustee.

Further facts will be discussed as necessary to resolve the issues raised on appeal.


Standing of Debtor to Appeal

In her brief, the trustee questions whether the debtor has standing to appeal the bankruptcy court's order, contending that he is not an aggrieved party because he no longer has any interest in the real estate he transferred to his son. Because standing is an element of federal subject matter jurisdiction, it may be raised as an issue at any time. See Sioux Falls Cable Television v. State of South Dakota, 838 F.2d 249, 251 (8th Cir. 1988).

"Ordinarily, a party to a lawsuit has no standing to appeal an order unless he can show some basis for arguing that the challenged action causes him a cognizable injury, i.e., that he is 'aggrieved' by the order." Yukon Energy Corp. v. Brandon Invs., Inc. (In re Yukon Energy Corp.), 138 F.3d 1254, 1259 (8th Cir. 1998)(quoting Spencer v. Casavilla, 44 F.3d 74, 78 (2d Cir. 1994)). "To appeal from an order of the bankruptcy court, appellants must have been directly and adversely affected pecuniarily by the order." Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc., 77 F.3d 880, 882 (6th Cir. 1996)(citations omitted). "This principle, also known as the 'person aggrieved' doctrine, limits standing to persons with a

4

financial stake in the bankruptcy court's order." Id. (citation omitted). In Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.), 151 F.3d 605, 607-608 (7th Cir. 1998), the Seventh Circuit Court of Appeals instructs that:

> Bankruptcy standing is narrower than Article III standing. Compare Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)(describing Article III standing) with In re Andreuccetti, 975 F.2d 413, 416 (7th Cir. 1992)(describing bankruptcy standing). To have standing to object to a bankruptcy order, a person must have a pecuniary interest in the outcome of the bankruptcy proceedings. Only those persons affected pecuniarily by a bankruptcy order have standing to appeal that order. See Andreuccetti, 975 F.2d at 416. Debtors, particularly Chapter 7 debtors, rarely have such a pecuniary interest because no matter how the estate's assets are disbursed by the trustee, no assets will revert to the debtor. See In re Schultz Mfg. Fabricating Co., 956 F.2d 686, 692 (7th Cir. 1992).
>             . . . .
> There is an established "exception" to the rule that debtors do not have standing to object to bankruptcy orders, which is not so much an exception as a careful application of the pecuniary interest rule itself. Occasionally a debtor might be able to satisfy all debts with the assets from the estate and be left with some amount remaining. If the debtor can show a reasonable possibility of a surplus after satisfying all debts, then the debtor has shown a pecuniary interest and has standing to object to a bankruptcy order. See Andreuccetti, 975 F.2d at 417.

In Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.), 181 F.3d 527, 530-31 (3d Cir. 1999), the Third Circuit Court of Appeals commented that:

> The "person aggrieved" standard, which is more stringent than the constitutional test for standing, serves the acute need to limit collateral appeals in the bankruptcy context. Id. As the Court of Appeals for the Ninth Circuit explained:
> > This need [to limit appeals] springs from the nature of bankruptcy litigation which almost always involves the interests of persons who are not formally parties to the litigation. In the course of administration of the bankruptcy estate disputes arise in which numerous persons are to some degree interested. Efficient judicial administration requires that appellate review be limited to those persons whose interests are directly affected.
> Fondiller v. Robertson (In re Fondiller), 707 F.2d 441, 443 (9th Cir. 1983).

5

"Whether an appellant is a person aggrieved is a question of fact." Fidelity Bank, Nat'l Ass'n, 77 F.3d at 882. See also Calpine Corp. v. O'Brien Envtl. Energy, Inc., 181 F.3d at 531(same).

Here, the attachments to the trustee's motion for partial summary judgment included the debtor's bankruptcy schedules, which show liabilities in the total amount of $98,558.74. In her affidavit, also attached to the motion for partial summary judgment, Paula Marlar Davis asserted that the real estate in question was worth "well over $200,000.00" when the debtor conveyed it to his son. The debtor attached a copy of a 1993 financial statement to his response to the motion for partial summary judgment in which he valued the subject real property at $335,000.00. It appears that it is highly possible that upon the trustee's sale of the property, the debtor's creditors will be paid in full with a substantial surplus to be turned over to the debtor. However, if that is the case, the debtor will actually benefit from the bankruptcy court's order setting aside the transfer of the real estate. Because it appears that the debtor will not be adversely affected pecuniarily by the bankruptcy court's order, it does not appear that the debtor has met the "person aggrieved" standard. Nevertheless, we feel it is appropriate to address the merits of the debtor's appeal.

## Merits of the Appeal

On appeal the debtor presses four reasons why the bankruptcy court improperly granted summary judgment in favor of the trustee: (1) the Chapter 7 trustee lacks standing to pursue the fraudulent transfer action because the trustee's right to bring such an action derives from the rights of individual creditors who would be barred from bringing such an action by the doctrines of res judicata and collateral estoppel;[2] (2) the fraudulent transfer claim was previously fully litigated in Paula Marlar Davis's state court action, therefore, the doctrines of res judicata and collateral estoppel apply to prevent the trustee from relitigating the fraudulent transfer question; (3) pursuant to Arkansas law, for purposes of setting aside the transaction as fraudulent, the pertinent conveyance occurred in 1986 when the debtor transferred the deed to the real estate to his son, and not when the deed was recorded in 1995;[3] and (4) genuine issues of material fact

---

[2] The debtor did not present this argument to the bankruptcy court. However, questions of standing may be raised at any time, even on appeal. See Sioux Falls Cable Television v. State of South Dakota, 838 F.2d 249, 251 (8th Cir. 1988).

[3] If the transaction alleged to be fraudulent indeed occurred in 1986 as asserted by the debtor, the trustee's action would be barred by the applicable statute of limitations. See Mancuso v. Continental Bank

exist regarding the date of the delivery of the property, whether the transfer was made without reasonably equivalent value, the alleged insolvency of the debtor and the existence of fraudulent intent on the part of the debtor.

We begin our discussion with this Court's standard of review of a bankruptcy court's grant of a summary judgment motion. In Ries v. Wintz Properties, Inc. (In re Wintz Cos.), 230 B.R. 848, 857-58 (B.A.P. 8th Cir. 1999), we very comprehensively discussed the applicable standard of review:

> We review the bankruptcy court's grant of summary judgment de novo. See Peter v. Wedl, 155 F.3d 992, 996 (8th Cir.1998); Mayard v. Hopwood, 105 F.3d 1226, 1227 (8th Cir.1997); Wade v. Midwest Acceptance Corp. (In re Wade), 219 B.R. 815, 818 (8th Cir. BAP 1998). Summary judgment is only appropriate "if the record 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir.1997) (quoting Fed. R. Civ. P. 56(c)); see Kraft v. Ingersoll-Rand Co., 136 F.3d 584, 585 (8th Cir.1998); In re Wade, 219 B.R. at 818; see also Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable in adversary proceedings in bankruptcy). In making this determination, the function of the presiding court is not to weigh evidence and to make credibility determinations, or to attempt to determine the truth of the matter, but is, rather, solely "to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); see Wedl, 155 F.3d at 996; Quick v. Donaldson Co., 90 F.3d 1372, 1376-77 (8th Cir.1996); see also Mathews v. Trilogy Communications, Inc., 143 F.3d 1160, 1163 (8th Cir.1998) ("When evaluating a motion for summary judgment, we must ... refrain from assessing credibility."). Indeed, under the proper analysis, "the [c]ourt views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences to be drawn from that evidence.'" Prudential Ins. Co. v. Hinkel, 121 F.3d 364, 366 (8th Cir.1997), cert. denied sub nom. Hinkel v. Hinkel, 522 U.S. 1048, 118 S. Ct. 693, 139 L. Ed. 2d 638 (1998); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); Dulany, 132 F.3d at 1237; Kunkel v. Sprague Nat'l Bank, 128 F.3d 636, 640 (8th Cir.1997).
> Upon a motion for summary judgment, the initial burden of proof is allocated to the movant in the form of demonstrating "that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986); see Matsushita, at 586, 106 S. Ct. at 1355; Hinkel,

---

Nat'l Ass'n Chicago (In re Topcor, Inc.), 132 B.R. 119 (Bankr. N.D. Tex. 1991); Ark. Code Ann. § 4-59-209 (Michie 1996).

121 F.3d at 366; Nelson v. Kingsley (In re Kingsley), 208 B.R. 918, 920 (8th Cir. BAP 1997). Once met, the burden then shifts to the nonmoving party "to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex, at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)); see Matsushita, at 587, 106 S. Ct. at 1356; Tenbarge v. Ames Taping Tool Sys., Inc., 128 F.3d 656, 658 (8th Cir.1997); In re Kingsley, 208 B.R. at 920.

In this respect, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts; [it] must show there is sufficient evidence to support a jury verdict in [its] favor." Chism v. W.R. Grace & Co., 158 F.3d 988, 990 (8th Cir.1998) (quoting Matsushita, at 586, 106 S. Ct. at 1356) (internal quotation marks omitted); see Anderson, at 249, 106 S. Ct. at 2510. "[T]he mere existence of a scintilla of evidence in favor of the nonmoving party's position is insufficient to create a genuine issue of material fact." Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 562 (8th Cir.1997) (internal quotation marks omitted, quoting In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 113 F.3d 1484, 1492 (8th Cir.1997)), cert. denied, 523 U.S. 1040, 118 S. Ct. 1336, 140 L. Ed. 2d 498 (1998); see Anderson, at 252, 106 S. Ct. at 2512; Devine v. Stone, Leyton & Gershman, P.C., 100 F.3d 78, 81-82 (8th Cir.1996), cert. denied, 520 U.S. 1211, 117 S. Ct. 1694, 137 L. Ed. 2d 821 (1997).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, at 322, 106 S. Ct. at 2552; see Chism, 158 F.3d at 990-91; Dulany, 132 F.3d at 1237; Rabushka, 122 F.3d at 562 (internal quotation marks omitted, quoting Temporomandibular Joint, 113 F.3d at 1492). "We look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' " Dulany, supra (quoting Anderson, at 248, 106 S. Ct. at 2510); see South Dakota Mining Assoc., Inc. v. Lawrence County, 155 F.3d 1005, 1009 (8th Cir.1998) (quoting same); Dodd v. Runyon, 114 F.3d 726, 729 (8th Cir.1997).

1. Standing of Chapter 7 Trustee to Pursue the Fraudulent Transfer Action

The debtor raises the question for the first time on appeal whether the Chapter 7 trustee has standing to pursue the 11 U.S.C. § 544 fraudulent transfer action. The debtor argues that the rights inherited by the trustee under section 544 are purely derivative in nature and because the trustee has failed to show the existence of a creditor who would be able to set aside the transfer of the property under Arkansas state law, the trustee lacks standing to pursue the fraudulent transfer action. The debtor asserts

that because the Arkansas state court ruled against Paula Marlar Davis in her fraudulent transfer action, any other creditor would be barred from bringing a fraudulent conveyance action in Arkansas state court pursuant to the doctrines of res judicata and collateral estoppel. Therefore, the debtor argues, there are no creditors' shoes in which the trustee may step in order to prosecute a fraudulent transfer action under section 544.

The trustee responds by asserting that she filed her fraudulent conveyance action pursuant to section 544(a), which does not require her to identify a specific unsecured creditor who could set aside the transfer. Accordingly, the trustee contends, she has standing to pursue the action under section 544(a) because of her status as a hypothetical lien creditor. Alternatively, the trustee asserts that she did identify several creditors in her complaint to whom the debtor was indebted at the time of the transfer, which establishes that she also has standing to proceed under section 544(b).

Section 544 of the Bankruptcy Code provides in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –
. . . .
   (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].
(b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544.

In paragraph 15 of her First Amended Complaint, the trustee generally alleged that she was entitled to avoid the debtor's transfer of the real estate to his son pursuant to the strong arm powers granted by section 544(a). In Counts I, II and III of the First Amended Complaint, the trustee alleged that she was entitled to avoid the transfer pursuant to section 544 and various provisions of the Arkansas Fraudulent Transfer Act. The trustee also specifically identified four creditors in her First Amended Complaint to

whom the debtor was indebted at the time he conveyed the property to his son. In her Motion for Partial Summary Judgment, the trustee relied on the existence of three of these creditors to support her entitlement to relief under section 544(b): Paula Marlar Davis, Farm Credit Services and Sandra Bradshaw, Esquire. We first address whether the trustee has standing under section 544(a), then turn our attention to an analysis of standing under section 544(b).

### A. Trustee's Standing under Section 544(a)

When, as in this case, real property is at issue, the applicable avoidance provision is section 544(a)(3). See Midlantic Nat'l Bank v. Bridge (In re Bridge), 18 F.3d 195, 199 (3d Cir. 1994). "Section 544(a)(3) allows the avoidance of a transfer of real property that is not perfected and enforceable against a bona fide purchaser at the time the bankruptcy petition is filed." Realty Portfolio, Inc. v. Hamilton (In re Hamilton), 125 F.3d 292, 298 (5th Cir. 1997). "While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status." Id. See also Bridge, 18 F.3d at 200 ("[T]he trustee's powers under § 544(a) are subject to the law of the locus of the property."); Lennington v. Graham (In re Graham), 110 B.R. 408, 411 (S.D. Ind. 1990)("Whether a trustee qualifies as a bona fide purchaser when seeking to avoid a transfer is a question to be determined by looking at state law."). The trustee's rights and powers under section 544(a) are determined as of the date the bankruptcy case was commenced. See Graham, 110 B.R. at 412.

The relevant Arkansas statute provides:

   (a) Every deed, bond, or instrument of writing affecting the title, in law or equity, to any real or personal property, within this state which is, or may be, required by law to be acknowledged or proved and recorded shall be constructive notice to all persons from the time the instrument is filed for record in the office of the recorder of the proper county.
   (b) No deed, bond, or instrument of writing for the conveyance of any real estate, or by which the title thereto may be affected in law or equity, made or executed after December 21, 1846, shall be good or valid against a subsequent purchaser of the real estate for a valuable consideration without actual notice thereof or against any creditor of the person executing such an instrument obtaining a judgment or decree which by law may be a lien upon the real estate unless the deed, bond, or instrument, duly executed and acknowledged or proved as required by law, is filed for record in the office of the clerk and ex officio recorder of the county where the real estate is situated.

10

Ark. Code Ann. § 14-15-404 (Michie 1998). Pursuant to Arkansas law, a recorded deed provides constructive notice to a subsequent bona fide purchaser of the real estate. See, e.g., Massey v. Wynne, 791 S.W.2d 368, 369 (Ark. 1990)("Recordation of an instrument which affects title to real property is constructive notice of that interest to all persons from the time the instrument is filed."); Andrews v. All Heirs and Devisees of H.J. Bellis, 759 S.W.2d 532, 534 (Ark. 1988)(Hays, J., dissenting)("[R]ecordation . . . becomes important in order to give notice to subsequent bona fide purchasers."); Hughes v. McCann, 678 S.W.2d 784, 786 (Ark. App. 1984)("[P]arties alleging fraud are charged with knowledge of any pertinent real estate conveyances from the time such conveyances are placed in public records."); Davis v. Burford, 125 S.W.2d 789, 791 (Ark. 1939)(recorded deed provides constructive notice to bona fide purchaser); Long v. Langsdale, 19 S.W. 603 (Ark. 1892)(same).

Under Arkansas law, a bona fide purchaser only prevails when he or she lacks notice of the transaction in question. A bona fide purchaser is charged with constructive notice of a transfer when the deed is recorded. Here, the deed was recorded prior to the filing of the involuntary bankruptcy petition. Therefore, the trustee, to whom constructive notice of the recorded deed is imputed, cannot utilize section 544(a)(3) to set aside the conveyance. See also Hamilton, 125 F.3d at 299 (Although actual knowledge of the trustee is irrelevant under section 544(a), constructive notice given by properly recorded instruments is charged to a person as a matter of law, regardless of the person's actual knowledge.); In re Mill Concepts Corp., 123 B.R. 938, 941, 942 (Bankr. D. Mass. 1991)(Section 544(a)(3) grants only the ability to avoid an unperfected transfer by the debtor, and a trustee armed with the powers of a bona fide purchaser of real estate prevails over the holder of an unrecorded mortgage.); Graham, 110 B.R. at 413 ("[T]he state law of constructive notice remains applicable in the context of § 544(a)(3)."); Meininger v. Grigsby (In re Sperry), 101 B.R. 767, 769 (Bankr. M.D. Fla. 1989)("Under § 544(a)(3), the trustee assumes the position of a bona fide purchaser and may void a mortgage interest which was unrecorded as of the petition date."). "Code § 544(a) provides the trustee with various statuses that, among other things, invalidate many transfers that are incomplete at the time of bankruptcy because the parties have not complied with applicable state recording laws." 3 Norton Bankruptcy Law and Practice 2d § 54:1 (1997). In short, the recording of the deed pre-petition extinguished the trustee's avoidance power under section 544(a)(3).

11

B. Trustee's Standing Under Section 544(b)

"The powers under [Section] 544(b) are in addition to . . . the powers under Section 544(a)." Brent Explorations, Inc. v. Karst Enters., Inc. (In re Brent Explorations, Inc.), 31 B.R. 745, 748 (Bankr. D. Colo. 1983). Bankruptcy trustees use section 544(b) as a conduit to assert state-law-based fraudulent conveyance actions in bankruptcy. See Wintz Cos., 230 B.R. at 859. "Section 544(b) of the Bankruptcy Code gives the bankruptcy trustee whatever avoiding powers an unsecured creditor with an allowable claim might have under applicable state or federal law." Blackwell v. Lurie (In re Popkin & Stern), ___ F.3d ___, 2000 WL 1146044, *4 n.11 (8th Cir. Aug. 15, 2000). Here, the applicable state law is the Arkansas enactment of the Uniform Fraudulent Transfer Act, Ark. Code Ann. §§ 4-59-201 to 4-59-213 (Michie 1996).

In her motion for partial summary judgment, the trustee asserted that summary judgment should be granted on the two constructive fraud counts of her adversary complaint. The provisions of the Arkansas Fraudulent Transfer Act relied upon by the trustee to support the two constructive fraud counts state in relevant part:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>      . . . .
>   (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>      (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>      (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Ark. Code Ann. § 4-59-204(a)(2)(Michie 1996).

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Ark. Code Ann. § 4-59-205(a)(Michie 1996).

12

In order to avail herself of the avoidance powers contained in section 544(b), the trustee must show the existence of an actual unsecured creditor holding an allowable unsecured claim who could avoid the transfer in question under the provisions of the Arkansas Fraudulent Transfer Act. See Wintz Cos., 230 B.R. at 859. See also Panama Williams, Inc. v. Parr (In re Panama Williams, Inc.), 211 B.R. 868, 870 (Bankr. S.D. Tex. 1997)("[T]he trustee must locate an existing unsecured creditor of the debtor who, on the date of bankruptcy, is able to avoid a transfer of property."); Young v. Paramount Communications, Inc. (In re Wingspread Corp.), 178 B.R. 938, 945 (Bankr. S.D.N.Y. 1995)("In order for a trustee to maintain an action for avoidance of a fraudulent conveyance, the trustee must show that at least one of the present unsecured creditors of the estate holds an allowable claim, against whom the transfer or obligation was invalid under applicable state or federal law."). "Under § 544(b), the Trustee bears the burden of proving the existence of a qualified unsecured creditor: a creditor holding an allowable unsecured claim who could bring the same avoidance action the Trustee is bringing." Lassman v. Goldstein (In re Goldstein), 194 B.R. 1, 2-3 (Bankr. D. Mass. 1996). "If the creditor is estopped or barred from recovery for some . . . reason, so is the trustee." Brent Explorations, 31 B.R. at 748. The trustee is subject to any defenses that could be asserted against the unsecured creditor. See Belfance v. Bushey (In re Bushey), 210 B.R. 95, 100 (B.A.P. 6th Cir. 1997).

In her motion for partial summary judgment, the trustee identified three specific unsecured creditors existing when the bankruptcy petition was filed who she alleged could avoid the transfer of the real property under the Arkansas Fraudulent Transfer Act: Paula Marlar Davis, Farm Credit Services[4] and Sandra

---

[4] At the time the deed was recorded on June 30, 1995, and July 3, 1995, the debtor was indebted to Farm Credit Services on a loan that was secured by cattle. However, beginning with the payment due July 1, 1995, the debtor defaulted in his loan payments. Farm Credit Services accelerated the loan on December 11, 1995, then pursuant to a replevin order entered April 9, 1996, repossessed and sold the cattle. The net sale proceeds were insufficient to satisfy the debt, and on January 6, 1998, Farm Credit Services obtained a deficiency judgment against the debtor in the amount of $29,708.49. Although Farm Credit Services was a secured creditor when the deed was recorded, it became a "future creditor" within the meaning of Ark. Code Ann. § 4-59-204 (Michie 1996), when it obtained a deficiency judgment for the unpaid balance of its loan prior to the bankruptcy filing. "[A] bankruptcy trustee can step into the shoes of any creditor that holds an allowable unsecured claim that arose after the challenged transfer" by means of the "future creditor" provision of the Uniform Fraudulent Transfer Act. Belfance v. Bushey (In re Bushey), 210 B.R. 95, 104 (B.A.P. 6th Cir. 1997)(case decided under Ohio's version of the Uniform Fraudulent Conveyance Act, which was the precursor to the Uniform Fraudulent Transfer Act). The Eighth

13

Bradshaw, Esquire.[5] In response to the trustee's identification of the foregoing three creditors, the debtor summarily stated that:

> The indebtedness alleged to Farm Credit Services, Sandra Bradshaw, Paula Davis, and any other creditors alleged did not exist on the <u>effective</u> date of transfer and conveyance, December 19, 1986, and accordingly there can be no finding as a matter of law that such a transfer was fraudulent in the absence of such debt in 1986.

The debtor never denied that the foregoing creditors existed when the deed was recorded or when the involuntary bankruptcy petition was filed; he just defended on the grounds they did not exist in 1986. The bankruptcy court found that the debtor had a number of debts at the time the deed was recorded in 1995. On appeal, the debtor does not dispute this finding. He merely contends that because the state court fraudulent transfer action was decided adversely to Paula Marlar Davis, all of his creditors were barred by either res judicata or collateral estoppel from asserting claims under the Arkansas Fraudulent Transfer Act, therefore, the trustee lacks a qualifying unsecured creditor to have standing to prosecute the section 544(b) cause of action.

"[U]nder the doctrine of res judicata, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action." <u>Bruns Foods of Morrilton, Inc. v. Hawkins</u>, 944 S.W.2d 509, 510 (Ark. 1997). <u>See</u> <u>also</u> <u>Armstrong v. Norwest Bank, Minneapolis, N.A.</u>, 964 F.2d 797, 802 (8th Cir. 1992). "Privity of parties within the meaning of res judicata means 'a person so identified in interest with another that he represents the same legal right.'" <u>Id.</u> (citations omitted); <u>see</u> <u>also</u> <u>Spears v. State Farm Fire and Casualty Ins.</u>, 725 S.W.2d 835, 837 (Ark. 1987). Collateral estoppel requires that "(1) the issue

_____

Circuit Court of Appeals, in a pre-Uniform Fraudulent Transfer Act case, has ruled that "[p]rior to the entry of [a] deficiency judgment, one whose debt is secured by [a] mortgage cannot maintain a suit to set aside an alleged fraudulent transfer" of other property owned by the debtor. <u>Carson v. Long-Bell Lumber Corp.</u>, 73 F.2d 397, 403 (8th Cir. 1934).

[5] The debtor owed a debt to Sandra Bradshaw, Esquire in the amount of $2536.75 for unpaid attorney's fees at the time the deed was recorded. This debt was unsecured. On December 14, 1995, Bradshaw obtained a default judgment against the debtor in the amount of $3036.75. Subsequently, Bradshaw obtained a Writ of Execution. The only property obtained through the Writ of Execution was a used car that was sold at public auction. After the vehicle was sold, there remained an outstanding debt in the amount of $1539.97.

sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) a determination must have been essential to the judgment." National Bank of Commerce v. The Dow Chemical Co., 1 S.W.3d 443, 449 (Ark. 1999). "The doctrine of collateral estoppel . . . is applicable only when the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question." Arkansas Dep't of Human Servs. v. Dearman, 842 S.W.2d 449, 451 (Ark. App. 1992)(en banc). See also Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir. 1979). Collateral estoppel "applies only to persons who were parties or who are in privity with persons who were parties in the first action and that persons in a privity relationship are deemed to have interests so closely intertwined that a decision involving one necessarily should control the other." Id. at 452 (citation omitted). In Arkansas Department of Human Services v. Dearman, the Court of Appeals of Arkansas discussed privity for purposes of res judicata and collateral estoppel and opined:

> [I]t appears to be the modern rule that privity should be applied when:
> 1. The claim of the nonparty is based on the same transaction or occurrence,
> 2. The interests of both claimants are similar and no adverse interests exist,
> 3. The nonparty had notice of the earlier action, and
> 4. The nonparty did or had an opportunity to participate or intervene in the earlier case.

Dearman, 842 S.W.2d at 452 (citation omitted).

Here, applying Arkansas law, it is clear that only Paula Marlar Davis would be precluded from bringing another fraudulent transfer action against the debtor pursuant to the doctrines of res judicata and collateral estoppel. However, we conclude that under Arkansas law neither Farm Credit Services nor Sandra Bradshaw would be prevented from bringing a fraudulent transfer action. Neither was a party in Paula Marlar Davis's previous state court action. Further, the record on appeal is absent of any evidence to show that under Arkansas law either was in privity with Paula Marlar Davis in her state court action. In her complaint, the trustee has specifically identified two unsecured creditors who under Arkansas law would be able to prosecute a fraudulent transfer action against the debtor in state court in an attempt to set aside the transfer of the real property, which provides the trustee with standing to proceed under section 544(b).

15

2. <u>Whether Trustee is Barred by Res Judicata or Collateral Estoppel</u>

On appeal, the debtor asserts that even if we determine that individual creditors would not be barred from bringing a fraudulent transfer action against him in state court, and thus provide the trustee with standing under section 544(b), the doctrines of res judicata and collateral estoppel do prevent the trustee from independently prosecuting the section 544(b) cause of action because the exact same claim and issues that will be litigated in the section 544(b) action were previously litigated in Paula Marlar Davis's state court lawsuit. The debtor contends that in her state court fraudulent transfer action, Paula Marlar Davis represented the same statutory legal right as the trustee asserts in the section 544(b) cause of action, and further argues that "the trustee and the plaintiff in the prior state court action shared such an identity of interest as to render the trustee in privity with the previous plaintiff."

In response, the trustee contends that her adversary proceeding does not involve the same cause of action as Paula Marlar Davis's state court lawsuit, and adamantly asserts that she is not in privity with Ms. Davis. The trustee argues that she represents the interest of all the creditors of the bankruptcy estate and is attempting to set aside the transfer for all their benefit, and not just the interest of Ms. Davis who sought to set aside the transfer only on her own behalf.

The principles of res judicata and collateral estoppel apply in bankruptcy proceedings. <u>See Johnson v. Miera (In re Miera)</u>, 926 F.2d 741, 743 (8th Cir. 1991); <u>Kapp v. Naturelle, Inc. (In re Kapp)</u>, 611 F.2d 703, 707 (8th Cir. 1979).

We agree with the debtor that the fraudulent transfer claim and attendant issues that were raised by Paula Marlar Davis in her prior state court action are substantially identical to the claim and issues raised in the trustee's section 544(b) cause of action. Further, a final judgment on the merits, whether it was right or wrong, was rendered by a court of competent jurisdiction in Ms. Davis's state court action. However, we disagree with the debtor's contention that the trustee is in privity with Ms. Davis.

In <u>Corzin v. Fordu (In re Fordu)</u>, 201 F.3d 693, 705 (6th Cir. 1999)(citations omitted), the Sixth Circuit Court of Appeals opined:

A bankruptcy trustee is the representative of all creditors of the bankruptcy estate. . . "[T]he trustee in bankruptcy . . . represents all creditors." . . . As such, the Trustee is not

16

simply the successor-in-interest to the Debtor: he represents the interest of all creditors of the Debtor's bankruptcy estate.

. . . .

Because the trustee is invested with "extraordinary rights . . . as a general representative of . . . creditors," he is "not bound, either on res judicata or judicial collateral estoppel [grounds] by the prior state proceedings."

. . . .

"Operation of res judicata requires identity of parties. Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein. Thus they cannot be bound by the dismissal of the action."

In Boyajian v. DeFusco (In re Giorgio), 62 B.R. 853, 862-63 (Bankr. D.R.I. 1986)(citations omitted), the bankruptcy court stated:

"[A] person cannot be barred from litigating a claim unless he was a formal party or 'in privy' with a formal party to the first action . . . [T]he [bankruptcy] trustee, who was neither a formal party . . . nor represented by a party . . . [is not barred] from litigating this claim." . . . In bringing the instant action, the trustee is carrying out his duties to "collect and reduce to money the property of the estate," and to "object to the allowance of any claim that is improper." . . . A primary obligation of the trustee is to ensure that the assets are liquidated and distributed equitably among creditors, and to accomplish this, fraudulent and/or usurious claims must be subject to scrutiny. . . . .

> Operation of res judicata requires identity of parties. Yet the creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein.

Finally, in Coleman v. Alcock, 272 F.2d 618, 621-22 (5th Cir. 1959)(footnotes omitted), the Fifth Circuit Court of Appeals opined:

[W]e are of the view that the Trustee is not bound, either on res judicata or judicial collateral estoppel, by the prior state court proceedings. The Trustee is, of course, a successor of the Bankrupt for many purposes. But he is much more both in the extraordinary rights with which the Bankruptcy Act invests him, and as a general representative of the creditors. Unless he intervenes and takes on the role of an active litigant subjecting himself thereby to the usual incidents of such action, he is not bound by the judgment merely because the Bankrupt was a party defendant in the prior litigation.

17

We are persuaded by the foregoing principles that the trustee in this case is not barred by either res judicata or collateral estoppel from pursuing the section 544(b) fraudulent transfer action. As the bankruptcy court so eloquently stated:

> Application of the privity principles indicates that neither the creditors nor the chapter 7 trustee were in privity with Paula Davis in the prior proceedings between John and Paula. The plaintiff in this action is the chapter 7 trustee who is a representative of all of the creditors of the bankruptcy estate. The trustee is not merely a successor to the interests of the debtor or a representative of a single creditor. Rather she represents the interests of all of the creditors of the estate. It cannot be said that the interests of all of the creditors are sufficiently identified with the interest of the debtor's former wife that they can be held to be in privity with Ms. Davis. While Ms. Davis may have had representation and be collaterally estopped from relitigating the issues, the remainder of the debtor's creditors were not parties to the prior actions and are not bound by the prior determination. Ms. [Davis] did not and does not now purport to have represented anyone else's interest but her own. Indeed, she will only be allowed to share in the trustee's recovery along with all of the other unsecured creditors of the debtor.

In sum, we hold that the trustee in this case is not barred by either res judicata or collateral estoppel from prosecuting the section 544(b) cause of action.

### 3. The Date of the Transfer of the Real Estate Under Arkansas Law

The debtor argues that pursuant to Arkansas law, the conveyance of the real estate occurred in 1986 when he delivered the deed to his son, and not in 1995 when the son recorded the deed. The debtor relies on three Arkansas cases to support his argument: Johnson v. Ramsey, 817 S.W.2d 200 (Ark. 1991); Barker v. Nelson, 812 S.W.2d 477 (Ark. 1991); and Graham v. Suddeth, 133 S.W. 1033 (Ark. 1911). In each of these cases, the Supreme Court of Arkansas restated the general rule of law that a delivered deed will pass title between the grantor and grantee even though it has not been recorded. Further, the recording of the deed raises a presumption of delivery. However, these cases do not involve a suit brought by a third-party creditor seeking to set aside a fraudulent conveyance of real estate, which was the scenario presented to the bankruptcy court.

In Arkansas, a fraudulent transfer action triggers the application of Arkansas's version of the Uniform Fraudulent Transfer Act. Section 4-59-206(1)(i) of the Arkansas Fraudulent Transfer Act provides that:

18

(1) A transfer is made:

   (i) With respect to an asset that is real property other than a fixture, but including the interest of a seller or purchaser under a contract for the sale of the asset, when the transfer is so far perfected that a good faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee.

Ark. Code Ann. § 4-59-206(1)(i)(Michie 1996). In Arkansas, prior to enactment of the Fraudulent Transfer Act,[6] it was well-established that:

No conveyance required by the provisions of this act to be recorded shall be valid or binding, except between the parties and their legal representatives, until the same shall have been deposited in the recorder's office for record; nor even then if shown to be made with intent to defraud prior creditors or purchasers, but shall be void against such prior creditors or purchasers.

Murphy v. Marshall, 159 S.W.2d 741, 744 (Ark. 1942)(citation and internal quotation marks omitted). "[F]or purposes of determining when the statute of limitations begins to run, parties alleging fraud are charged with knowledge of any pertinent real estate conveyances from the time such conveyances are placed in public records." Hughes v. McCann, 678 S.W.2d 784, 786 (Ark. App. 1984). Although already discussed above, it bears repeating that in Arkansas a subsequent bona fide purchaser will not be charged with constructive notice of the transfer of property until the deed is recorded. See Halbrook v. Lewis, 163 S.W.2d 171, 172 (Ark. 1942); Sturgis v. Nunn, 158 S.W.2d 673, 675 (Ark. 1942). Section 4-59-206(1)(i) of the Arkansas Fraudulent Transfer Act specifically addresses when a transfer of real estate occurs for purposes of determining whether such transfer is fraudulent. Under section 4-59-206(1)(i), it is clear that a transfer of real property occurs when the deed is recorded. See also Boardwalk Regency Corp. v. Burd, 620 A.2d 448, 449 (N.J. Super. Ct. App. Div. 1993)(appellate court interpreted New Jersey Fraudulent Transfer Act and ruled that a transfer of real estate occurs on the date the deed is recorded).

We conclude that the bankruptcy court correctly applied Arkansas fraudulent transfer law, and properly determined that the transfer of the real estate occurred when the deed was recorded in 1995.

---

[6] The Arkansas Fraudulent Transfer Act was enacted in 1987.

4. <u>Whether Genuine Issues of Material Fact Exist That Preclude Summary Judgment</u>

As his final point on appeal, the debtor asserts that genuine issues of material fact exist regarding the date of the delivery of the real estate, whether the transfer was made without reasonably equivalent value, the alleged insolvency of the debtor, and the existence of fraudulent intent on the part of the debtor that preclude the entry of summary judgment. For the following reasons, the debtor's arguments on this point must fail.

### A. <u>Date of Delivery of the Real Estate</u>

The debtor repeats the argument he advanced above, and contends the evidence shows that the transfer of the real estate occurred in 1986 and not in 1995. Although the debtor delivered the deed to his son in 1986, the evidence is undisputed that the deed was recorded on June 30, 1995, in the Office of the Dallas County Recorder, and was recorded on July 3, 1995, in the Office of the Ouachita County Recorder. These undisputed facts merely required the application of Arkansas fraudulent transfer law, which we have already determined the bankruptcy court correctly applied when ruling the transfer occurred in 1995 when the deed was recorded.

### B. <u>Reasonably Equivalent Value</u>

The debtor asserts the state court's finding in its order dismissing Paula Marlar Davis's fraudulent transfer action that "[t]he love and affection which exists between father and son satisfy the requirement that the conveyance be made for valuable consideration," shows the transfer was made for reasonably equivalent value in direct contravention to the bankruptcy court's determination that same was lacking.

In <u>First Nat'l Bank of Roland v. Rush</u>, 785 S.W.2d 474, 477-78 (Ark. App. 1990)(citations omitted), the Court of Appeals of Arkansas opined:

> Our law of fraudulent conveyances is well settled. When a financially embarrassed debtor conveys his property to a near relative or member of his household, the conveyance must be looked upon with suspicion and scrutinized with care. If the evidence shows the conveyance to be voluntary, it is prima facie fraudulent as to existing creditors. If the debtor is insolvent and unable to pay his debts, the presumption that the conveyance is fraudulent as to antecedent creditors is conclusive.

20

The Arkansas Fraudulent Transfer Act defines "value" in relevant part: "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied." Ark. Code Ann. § 4-59-203(a) (Michie 1996). According to the Comment to section 3 of the Uniform Fraudulent Transfer Act:

> Section 3(a) is adapted from § 548(d)(2)(A) of the Bankruptcy Code. See also § 3(a) of the Uniform Fraudulent Conveyance Act. The definition in Section 3 is not exclusive. "Value" is to be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors. Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition. The definition does not specify all the kinds of consideration that do not constitute value for the purposes of this Act – *e.g.*, love and affection. See, *e.g.*, United States v. West, 299 F. Supp. 661, 666 (D. Del. 1969).

7A Uniform Laws Annotated, Uniform Fraudulent Transfer Act § 3, Comment (1999).

In the context of defining "reasonably equivalent value" as that term is used in section 548 of the Bankruptcy Code, the Eighth Circuit Court of Appeals in Jacoway v. Anderson (In re Ozark Restaurant Equip. Co. Inc.), 850 F.2d 342, 344-45 (8th Cir. 1988), stated that "[t]he concept of reasonably equivalent value is a means of determining if the debtor received a fair exchange in the market place for the goods transferred. Considering all the factors bearing on the sale, did the debtor receive fair market value for the property."

In United States v. West, 299 F. Supp. 661, 665-66 (D. Del. 1969), the district court, in the context of applying the Delaware Fraudulent Conveyance Act to an alleged fraudulent transfer of real property, ruled that "love and affection" did not constitute fair consideration to support the transfer of the real estate to the transferors' son. The district court stated:

> Since the question of fair consideration as it pertains to an alleged fraudulent conveyance must be determined from the standpoint of creditors . . . it is clear that no fair equivalent is exchanged when the conveyance is simply for natural love and affection. The creditor's interest will not be protected since the debtor's property has departed without any fair equivalent taking its place.

Id. at 666 (citations and internal quotation marks omitted).

21

In Jahner v. Jacob, 252 N.W.2d 1, 5-6 (N.D. 1977), the Supreme Court of North Dakota opined:

It is contended that "love and affection" is a valid consideration for the conveyances made by Valentine Jacob. This is a correct statement, so far as the parties to the conveyances are concerned, if there is not fraud. Love and affection is a sufficient consideration for a deed. Trengen v. Mongeon, 206 N.W.2d 284 (N.D. 1973). But "love and affection" is not that "fair consideration" required by Section 13-02-04. As defined by the Uniform Fraudulent Conveyance Act, a "fair consideration" involves an exchange of property or obligation which is a fair equivalent of that conveyed. Sec. 13-02-03, N.D.C.C. Under this rule, conveyances to family members for love and affection have frequently been held fraudulent as to creditors. . . .

In Doerschuk v. Wiseman, 181 S.W.2d 789, 792 (Mo. App. 1944), the Kansas City Court of Appeals of Missouri stated that "a conveyance based on love and affection, when made by an insolvent, or by one made insolvent by the very act of conveying the property, cannot be regarded other than voluntary, and consequently fraudulent and void as to existing creditors." See also Walker v. Treadwell (In re Treadwell), 699 F.2d 1050, 1051 n.1 (11th Cir. 1983)("love and affection" are clearly insufficient consideration to protect transfers under 11 U.S.C. § 548; noting that "love and affection" have been held to be inadequate consideration under state fraudulent conveyance laws); McPherson Oil Co., Inc. v. Massey, 643 So. 2d 595, 596 (Ala. 1994)("[A] conveyance given in return for 'love and affection' is supported by 'good,' rather than 'valuable' consideration, and is thus a voluntary conveyance and void against existing creditors.").

Here, the unrebutted evidence in the record on appeal shows that the debtor transferred the real property to his son for ten dollars and love and admiration. We determine that the bankruptcy court did not err by finding that the foregoing consideration did not constitute reasonably equivalent value under the Arkansas Fraudulent Transfer Act.

C. Debtor's Insolvency

The debtor maintains that a genuine issue a material fact exists regarding whether he was insolvent at the time the deed was recorded in 1995. The Arkansas Fraudulent Transfer Act, in relevant part, provides that a debtor is insolvent "if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." Ark. Code Ann. § 4-59-202(a) (Michie 1996). Further, "[a] debtor who is generally

not paying his or her debts as they become due is presumed to be insolvent." Ark. Code Ann. § 4-59-202(b) (Michie 1996).

In her motion for summary judgment, the trustee presented evidence that the debtor was rendered insolvent upon transferring the real estate. Specifically, the trustee attached to the motion for summary judgment a transcript of a pretrial conference held in the bankruptcy court in which the debtor stated in response to the bankruptcy court's statement that if an order for relief was entered in the involuntary Chapter 7 case, a trustee would be appointed to take over the debtor's assets and sell them to pay creditors that "I have no assets. They have taken all my assets. So the only thing I [am] going to try to do here is conserve your time as well as mine." Further, the trustee attached an affidavit to her motion for summary judgment that had been prepared by Sandra Bradshaw, Esquire, in which she stated in pertinent part:

> 3. Our law firm obtained a Default Judgment against Mr. Marlar in the Crossett Municipal Court on December 14, 1995, in the total amount of $3,036.75. . . .
> 4. I filed the Default Judgment in the Office of Norma Castleberry, Circuit Clerk and Recorder for Dallas County, on December 28, 1995.
> 5. After I filed the Default Judgment in Dallas County, I obtained a Writ of Execution from the Clerk of Court and it was served by the Sheriff of Dallas County on John S. Marlar. The only property that was obtained through the Writ of Execution was a used car which was sold at public auction. After the vehicle was sold, there remained an outstanding debt to our law firm in the amount of $1,539.97 which is still outstanding and unpaid.

The debtor's only response to the trustee's evidence was to "specifically den[y] that Debtor and Defendant herein was in any way insolvent on the date of actual transfer and conveyance." The debtor totally failed to present any evidence of his solvency in his response to the trustee's motion for summary judgment. The debtor's son likewise failed to address the question of the debtor's solvency in his response to the trustee's motion.

Following the entry of the order granting the trustee's motion for partial summary judgment on Counts II and III of the adversary complaint, the bankruptcy court entered an order to show cause why final judgment should not be entered in favor of the trustee on the complaint. In the order to show cause, the bankruptcy court pointed out that it appeared unnecessary to render a decision on Count I of the complaint (actual fraud) because relief had been granted on the alternative Counts II and III of the complaint (constructive fraud). In his response to the order to show cause, the debtor's son, for the first

time, argued that a question of fact existed concerning whether the debtor was insolvent at the time the deed was recorded. The debtor's son relied upon statements made by Paula Marlar Davis in her petition for divorce filed on February 13, 1995, in which she alleged that "she and John Marlar 'own registered cattle which are located on several farms that they own in Dallas County, Arkansas. The registered cattle have a current market value of approximately $250,000.00.'" and further alleged that "'(t)he parties have acquired substantial marital property during their marriage.'" A copy of Ms. Davis's petition for divorce was attached to the debtor's son's response. Although a copy of Ms. Davis's petition for divorce was also attached to the debtor's son's original response to the trustee's motion for partial summary judgment, the son, at that time, advanced absolutely no arguments in regards to the solvency of the debtor.

Subsequent to the entry of the order granting the trustee's motion for partial summary judgment and the entry of the order to show cause, the debtor filed a pleading entitled Amended Response to Motion for Summary Judgment to which he attached an affidavit that purported to establish his solvency effective June 30, 1995. The affidavit lists only assets allegedly owned by the debtor on June 30, 1995, and does not list any indebtedness. Contemporaneously, the debtor also filed a pleading entitled Motion to Amend Response to Motion for Summary Judgment in which he requested leave of the bankruptcy court "to amend his prior response to supply additional financial information pertaining to his solvency effective throughout the year 1995." The debtor pleaded that "[s]uch amendment goes to the heart of the Court's pending decision in this regard and addresses this Court's order to show cause filed in this same matter." The bankruptcy court treated the debtor's and debtor's son's motions as requesting reconsideration of the order granting partial summary judgment, and denied the request to supplement the original responses to the motion for summary judgment to add financial information pertaining to the debtor's solvency at the time the deed was recorded.

On appeal, the debtor asserts that the copy of Ms. Davis's petition for divorce that was attached to his son's response to the order to show cause along with the affidavit in which he listed his assets as of June 30, 1995, raise a genuine issue of material fact regarding his solvency which precludes the entry of summary judgment. The debtor argues that the bankruptcy court opened the proceeding for the submission of new evidence by entering the order to show cause and requesting the parties show cause why a final judgment should not be entered in favor of the trustee. The debtor also points out that a copy of Ms. Davis's petition for divorce was attached to his son's original response to the trustee's motion for partial summary judgment and, accordingly, the statements made in the petition concerning the value of the debtor's assets should have been considered by the bankruptcy court when making its initial ruling.

First, we do not believe that the bankruptcy court intended to open the matter for additional evidence by entering the order to show cause. The bankruptcy court entered the order to show cause because summary judgment had been granted on two counts of the three-count complaint. Although the need to address the remaining count appeared to be moot, the bankruptcy court merely attempted to give the parties an opportunity to advise the court if any reason existed that required the court to rule on the remaining count. Accordingly, the bankruptcy court correctly refused to consider the debtor's post-judgment affidavit in which he purported to list assets owned as of June 30, 1995. See Chism v. W.R. Grace & Co., 158 F.3d 988, 992 n.4 (8th Cir. 1998). In any event, the affidavit fails to list liabilities and, therefore, is insufficient to establish solvency under section 4-59-202(a) of the Arkansas Fraudulent Transfer Act. Further, even if Ms. Davis's petition for divorce might be construed to contain information that raises a question of solvency under section 4-59-202(a), the debtor failed to rebut the presumption of insolvency created by section 4-59-202(b). The affidavit of Larry F. Hall, who is employed by Farm Credit Services, which was attached to the trustee's motion for summary judgment, advises that the debtor defaulted on his loan obligation beginning with his July 1, 1995 payment. Thereafter, the loan remained delinquent. Likewise, the affidavits of Paula Marlar Davis and Sandra Bradshaw, along with the attachments thereto, establish that the debtor failed to pay his debts to them around the time period in which the deed was recorded. At the time the transfer of the real estate occurred, the debtor was not paying his debts to either Farm Credit Services, Ms. Davis or Sandra Bradshaw as they became due, which raises a presumption of insolvency under section 4-59-202(b).

In sum, we determine that no genuine issue of material fact exists regarding the solvency of the debtor which would preclude the entry of summary judgment in favor of the trustee.

### D. Existence of Fraudulent Intent on the Part of the Debtor

Lastly, the debtor contends that summary judgment was improperly granted in favor of the trustee because the trustee failed to prove that he intended to defraud his creditors.

The bankruptcy court did not grant summary judgment on Count I of the trustee's complaint, which alleged the transfer was actually fraudulent under Ark. Code Ann. § 4-59-204(a)(1). That section requires proof that the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor." The court granted summary judgment on Counts II and III of the trustee's complaint, which

25

alleged constructive fraud under Ark. Code Ann. § 4-59-204(a)(2) and § 4-59-205, respectively. "The law does not require parties challenging a transaction as constructively fraudulent to establish actual dishonesty or intent." <u>Benson v. Richardson</u>, 537 N.W.2d 748, 757 (Iowa 1995). A court can properly set aside a conveyance of property as in fraud of creditors notwithstanding that the conveyance may not have been made with the actual intent to defraud creditors. <u>See</u> <u>White v. Milburn</u>, 122 S.W.2d 589, 592 (Ark. 1938).

Because evidence, or the lack thereof, of fraudulent intent on the part of the debtor is irrelevant under the constructive fraud provisions of the Arkansas Fraudulent Transfer Act, the bankruptcy court did not err by granting summary judgment in favor of the trustee on the two counts alleging constructive fraud.

<u>Conclusion</u>

We affirm the bankruptcy court's order granting summary judgment in favor of the trustee.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT